Thomas KROEPLIN, Plaintiff-Appellant,†

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES,
Defendant-Respondent,†

Gregg WALKER and The Lakeland Times,
Intervenors-Respondents.
[Case No. 2005AP1093]

The LAKELAND TIMES and Gregg Walker,
Plaintiffs-Respondents,

v.

WISCONSIN DEPARTMENT OF NATURAL RESOURCES and
Randy Stark, Defendants-Appellants,†

Thomas KROEPLIN, Intervenor.†
[Case No. 2005AP2427]

Court of Appeals

*Nos. 2005AP1093, 2005AP2427. Oral argument April 19, 2006.
—Decided October 12, 2006.*

2006 WI App 227

(Also reported in 725 N.W.2d 286.)

† Petition to review denied 1/10/07.

On behalf of the plaintiff-appellant Thomas Kroeplin, the cause was submitted on the briefs of and oral argument by *Kurt C. Kobelt* of *Lawton & Cates* of Madison.

On behalf of the defendants-appellants Wisconsin Department of Natural Resources and Randy Stark, the cause was submitted on the briefs of *Maureen M. Flanagan*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *Maureen M. Flanagan*.

On behalf of the defendant-respondent Wisconsin Department of Natural Resources, the cause was submitted on the brief of *Maureen M. Flanagan*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *Maureen M. Flanagan*.

On behalf of the plaintiffs-respondents and intervenors-respondents The Lakeland Times and Gregg Walker, the cause was submitted on the briefs of *Robert J. Dreps* and *Jennifer L. Peterson* of *LaFollette Godfrey & Kahn* of Madison. There was oral argument by *Robert J. Dreps*.

An amicus brief was filed by *Kurt C. Kobelt* of *Lawton & Cates,* Madison, for *Thomas Kroeplin*.

Before Vergeront, Deininger and Higginbotham, JJ.

¶ 1. HIGGINBOTHAM, J. This is a consolidation of two appeals arising from the same request by a newspaper, pursuant to Wisconsin's open records law, WIS. STAT. §§ 19.31–19.39 (2003–04),[1] for documents related to the misconduct investigation and subsequent disciplinary actions taken against a law enforcement

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

officer. Department of Natural Resources (DNR) Conservation Warden Thomas Kroeplin is the subject of the requested documents and is the appellant in *Kroeplin v. DNR*, No. 2005AP1093. He appeals the circuit court's order and judgment denying his request for an injunction preventing release of the records by the DNR to The Lakeland Times. The DNR is the custodian of Kroeplin's misconduct investigation and disciplinary records and is the appellant in the second case, *The Lakeland Times v. DNR*, No. 2005AP2427, along with Kroeplin's supervisor, DNR Chief Warden Stark. The DNR and Stark (collectively, "the DNR") appeal the court's grant of a writ of mandamus to The Lakeland Times requiring full disclosure of the requested records.

¶ 2. Kroeplin argues that WIS. STAT. § 19.36(10)(d) exempts all records from public disclosure relating to the investigation of his violation of DNR work rules and of the subsequent disciplinary action taken. The DNR argues that § 19.36(10)(d) exempts only certain parts of those records, which it redacted. Subsection (10)(d) creates an exemption from disclosure for "information used in staff management planning." In the alternative, the DNR and Kroeplin both argue that the public interest favoring nondisclosure outweighs the public interest favoring disclosure. We conclude that the Kroeplin records do not fall within the § 19.36(10)(d) exception and that the public interest in disclosing the Kroeplin misconduct investigation and disciplinary records as requested by The Lakeland Times outweighs the public's interest in nondisclosure. We therefore affirm.

### BACKGROUND

¶ 3. The material facts are not in dispute. On September 20, 2004, DNR conservation warden Thomas Kroeplin requested a license plate check from a

City of Minocqua police dispatcher. Kroeplin's request came to the attention of a local newspaper, The Lakeland Times, which had obtained a copy of the transcript of Kroeplin's call to the dispatcher. The Lakeland Times subsequently questioned the legality of Kroeplin's license plate check request in a series of articles. The articles noted the suspicious nature of Kroeplin's request resulting from the timing of the request—six minutes after his nephew had tried to obtain the same information from the dispatcher about the same car—in conjunction with the fact that the car belonged to a friend of the victim in a drug-planting case in which Kroeplin's nephew was arrested.

¶ 4. Between December 2004 and January 2005, the DNR conducted an investigation into whether Kroeplin's September 20, 2004 request constituted misconduct in violation of DNR work rules. As a result of the investigation, DNR Conservation Warden Supervisor Thomas Wrasse wrote an interdepartmental disciplinary memorandum and sent Kroeplin a disciplinary letter on January 31, 2005.

¶ 5. On February 3, 2005, Gregg Walker, General Manager of The Lakeland Times, filed an open records request for "all public documents related to" the license plate check request, specifying that such documents should include "the agency's conclusions and findings—as well as supporting documents—reached in an investigation of that incident."

¶ 6. Randy Stark, Director of the Bureau of Law Enforcement at the DNR, responded in a February 22, 2005 letter that the DNR would release portions of the disciplinary letter and disciplinary recommendation memo, but would not release the other information requested for various policy reasons. After citing several specific policy reasons for denying the request,

which we describe in more detail in our analysis, the letter also informed Walker of his right to bring an action for mandamus pursuant to WIS. STAT. § 19.37(1) to compel disclosure of the remaining records. In response to the DNR's denial letter, The Lakeland Times and Gregg Walker (collectively, "The Lakeland Times") brought a mandamus action requesting disclosure of those documents.

¶ 7. In accordance with the notice requirements of Wisconsin's open records law, Stark also sent Kroeplin a letter notifying him that the DNR would be releasing portions of the disciplinary letter and memo regarding his misconduct investigation, and notifying him of his right to seek a restraining order under WIS. STAT. § 19.356 to prevent the DNR from disclosing the records. In response, Kroeplin filed a court action seeking to enjoin release of those records, alleging that the information was "highly personal and prejudicial if made public, and . . . has the potential to cause serious harm to the privacy and reputational interests of [Kroeplin]."

¶ 8. The DNR submitted an affidavit in which Stark explained the reasons he provided in his denial letter. After considering all submissions and oral argument, the circuit court ruled that neither the WIS. STAT. § 19.36(10)(d) exception to Wisconsin's open records law nor the public policy reasons asserted by the DNR in its denial letter justified the DNR's failure to fully comply with the newspaper's open records request. The court consequently denied Kroeplin's request for an injunction and issued a writ of mandamus ordering the release of all documents related to the investigation of Kroeplin's license plate check request and subsequent

disciplinary measures taken. The court stayed enforcement of the judgment pending appeal in the two companion cases.

¶ 9. The circuit court reaffirmed its decision upon reconsideration after the Wisconsin Supreme Court decided *Hempel v. City of Baraboo*, 2005 WI 120, 284 Wis. 2d 162, 699 N.W.2d 551. Kroeplin and the DNR each appealed the court's decision; their appeals have been consolidated.

## DISCUSSION

### *I. Statutory Interpretation*

¶ 10. The first issue we must resolve is whether WIS. STAT. § 19.36(10)(d) exempts from disclosure the investigation and disciplinary records The Lakeland Times requested. The resolution of this case turns on our interpretation and application of § 19.36(10)(b) and (d) and other relevant statutes. We review questions of statutory interpretation de novo. *State v. Stenklyft,* 2005 WI 71, ¶ 7, 281 Wis. 2d 484, 697 N.W.2d 769.

¶ 11. Statutory interpretation begins with the statute's text; we give the text its common, ordinary, and accepted meaning, except that we give technical or specially defined words their technical or special definitions. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. We interpret statutory language in the context within which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.,* ¶ 46. In construing a statute we are to give deference to the policy choices made by the legislature in enacting the law. *Id.,* ¶ 44.

We also consider the scope, context and structure of the statute itself. *Id.*, ¶¶ 46, 48. If this process of analysis yields a plain meaning, then there is no ambiguity and we apply that plain meaning. *Id.*, ¶ 46. If, however, a statute is ambiguous, we may consider certain extrinsic sources, typically the legislative history, to ascertain its meaning. *Id.*, ¶¶ 46, 48, 50–51. "A statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." *Id.*, ¶ 47.

**[7–9]**

¶ 12. We begin our discussion recognizing the strong presumption of openness and liberal access to public records established by Wis. Stat. § 19.31, which describes the open records law's underlying policy of open access to records related to government officers and employees:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

The strong presumption favoring disclosure of public records "reflects the basic principle that the people must be informed about the workings of their govern-

ment and that openness in government is essential to maintain the strength of our democratic society." *Linzmeyer v. Forcey*, 2002 WI 84, ¶ 15, 254 Wis. 2d 306, 646 N.W.2d 811. "Because the denial of public access is generally contrary to public interest, access may be denied only in exceptional cases." *Kailin v. Rainwater*, 226 Wis. 2d 134, 142, 593 N.W.2d 865 (Ct. App. 1999).

¶ 13. The strong presumption of public access may give way to statutory or specified common law exceptions, or if there is an overriding public interest in keeping the public record confidential. *Hathaway v. Joint Sch. Dist.*, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984). The public has no absolute right to inspect documents. *Id.* at 396. However, exceptions to the open records law are to be narrowly construed; unless the exception is explicit and unequivocal, we will not hold it to be an exception. *Id.* at 397. Thus, prior to releasing a public record pursuant to an open records request, the records custodian, mindful of the strong legislative policy of public access to public records, must first determine whether a specific statutory or common law exception applies, preventing disclosure. *See Hempel*, 284 Wis. 2d 162, ¶¶ 28, 83. Once the records custodian determines that no specific exception prevents disclosure, then the custodian must determine "whether the strong presumption favoring access and disclosure is overcome by some even stronger public policy favoring limited access or nondisclosure." *Id.*

*A. WISCONSIN STAT. § 19.36(10)(d) is Ambiguous*

¶ 14. WISCONSIN STAT. § 19.36(10)(d) is an exception to Wisconsin's open records law relating to employee

267

personnel records. The subsection exempts from public access

> [i]nformation relating to one or more specific employees that is used by an authority or by the employer of the employees for staff management planning, including performance evaluations, judgments, or recommendations concerning future salary adjustments or other wage treatments, management bonus plans, promotions, job assignments, letters of reference, or other comments or ratings relating to employees.

The parties offer competing interpretations of the statute as applied to Kroeplin's records.

¶ 15. Kroeplin argues that WIS. STAT. § 19.36(10)(d) applies to all records related to his misconduct investigation and subsequent discipline because "[i]t is obvious that a disciplinary record in an employee personnel file will be used by an employer when engaging in the kinds of activities listed in § 19.36(10)(d)." Kroeplin offers limitations on this broad construction of § 19.36(10)(d) by explaining that the only disciplinary records covered by § 19.36(10)(d) would be those that reflect actual discipline imposed, as opposed to records of investigations where an employee was exonerated and discipline was not ultimately imposed. Under his construction of § 19.36(10)(d), the latter documents may be disclosed, since those records will not be used by the employer for "staff management planning."

¶ 16. In what it calls a "narrow but reasonable" interpretation of WIS. STAT. § 19.36(10)(d), the DNR argues that § 19.36(10)(d) exempts from disclosure most, but not all, of the information contained in Kroeplin's investigation and disciplinary records. The key to the DNR's interpretation of the statute is its distinction between factual information, which the DNR argues may be disclosed under § 19.36(10)(d), and supervisory opinions, which it argues may not be dis-

closed. "[T]he focus of the exception," the DNR argues, "is evaluative information, including both evaluative statements themselves and related information that forms or will form the basis of an evaluation, recommendation or judgment used for purposes of staff management planning." Also, under the DNR's interpretation of the § 19.36(10)(d) exception as applied to disciplinary or misconduct records, "mere theoretical usage or simply the remote possibility of use would not be sufficient."

¶ 17. In a "plain language" interpretation of Wis. Stat. § 19.36(10)(d), The Lakeland Times argues that the statute does not apply to any of the records at issue in this case, emphasizing that the text of § 19.36(10)(d) does not mention investigative or disciplinary records. The Lakeland Times contends that an interpretation of the statute that prevents disclosure of disciplinary and investigation records which might be used some day for "staff management planning" is overly broad, ignores the statute's history and context, violates statutory construction standards, and "allow[s] record custodians to deny any meaningful public oversight of the disciplinary process." The Lakeland Times further contends that the DNR's distinction between factual information and judgments is an "unworkable" and "artificial" distinction in conflict with plain statutory language.

¶ 18. We conclude that Wis. Stat. § 19.36(10)(d) is ambiguous; each party's interpretation of the statute has reasonable aspects. On the one hand, the plain language of the § 19.36(10)(d) exception applies to information used for "staff management planning, including performance evaluations . . . ." Performance evaluations, in turn, may make reference to information contained in records relating to disciplinary actions, in general, and disciplinary actions taken based

on investigations of possible criminal activity or possible misconduct, in particular. Thus, it may be reasonable to read § 19.36(10)(d) as exempting from disclosure performance evaluations containing this information.

¶ 19. On the other hand, the phrase "staff management planning" suggests an ongoing planning process. In that context, it is reasonable to interpret WIS. STAT. § 19.36(10)(d) as referring to performance evaluations as some kind of ongoing or regular evaluation of job performance by management, which suggests, in turn, that it is the more routine and typical disciplinary action such as for tardiness or absenteeism which is subject to the absolute bar to disclosure under § 19.36(10)(d). In addition, the text of § 19.36(10)(d) fails to mention disciplinary or misconduct investigation records at all, leading to the possible conclusion that § 19.36(10)(d) does not except disciplinary and misconduct investigation records under any circumstance, as argued by The Lakeland Times. Therefore, given § 19.36(10)(d)'s unclear application to misconduct investigation and disciplinary records, the parties in this case have come to three different but plausible interpretations of the statute.

B. WISCONSIN STAT. § 19.36(10)(d) Does Not Create A Blanket Exception for Disciplinary and Misconduct Investigation Records

¶ 20. The parties' dispute centers on the meaning and application of the term "staff management planning" within the meaning of WIS. STAT. § 19.36(10)(d). Kroeplin argues that § 19.36(10)(d) serves as a blanket exclusion of all his misconduct investigation and disciplinary records. More specifically, Kroeplin reasons that because performance evaluations are expressly excepted from disclosure under § 19.36(10)(d) as one

among other types of documents related to staff management planning, and because the records The Lakeland Times seeks will likely be used for future performance evaluations, these documents therefore are "absolutely protected" from disclosure. The DNR argues that only certain parts of those records are excepted from disclosure under § 19.36(10)(d). We disagree with both parties' arguments.

¶ 21. We look first to the statutory language itself. As we have explained, the text of WIS. STAT. § 19.36(10)(d) is ambiguous insofar as determining whether Kroeplin's misconduct investigation and disciplinary records are excepted from public disclosure. However, we note two things in the language of § 19.36(10)(d). First, the subsection does not expressly except disciplinary records from public access; as The Lakeland Times points out, § 19.36(10)(d) does not contain the word "discipline" within its text. Second, performance evaluations are just one type of document among others listed in that subsection that are exempt from disclosure as containing information an employer uses for "staff management planning." A common sense reading of "performance evaluations" in this context refers to evaluations management generates on a routine basis for planning purposes.

¶ 22. While performance evaluations might make reference to disciplinary records, there is no clear indication by the text of WIS. STAT. § 19.36(10)(d) that the legislature intended to exclude access to disciplinary records simply because performance evaluations may contain information gleaned from documents of disciplinary matters. In contrast to the types of documents listed in § 19.36(10)(d) as being exempt because they relate to staff management planning, disciplinary records may contain information of great interest and

271

value to the public. Previous case law on this topic firmly reflects the public's interest in disciplinary actions taken against public officials and employees, especially those employed in a law enforcement capacity. *See Local 2489 v. Rock County*, 2004 WI App 210, ¶ 26, 277 Wis. 2d 208, 689 N.W.2d 644.

¶ 23. In *Ledford v. Turcotte*, 195 Wis. 2d 244, 536 N.W.2d 130 (Ct. App. 1995), a prison inmate filed an open records request seeking documents relating to an investigation into allegations that some correctional staff had unlawfully obtained and consumed Canada geese. *Id.* at 246–47. We reversed the trial court's denial of Ledford's open records request, concluding that, if the investigation demonstrates that public employees were engaged in illegal conduct, the public is entitled to that information. *Id.* at 251–53. This conclusion rested on the recognition of this state's strong public policy in favor of public access to information regarding the affairs of government and the conduct of public officials and employees. *Id.* at 251.

¶ 24. The issue in *Wisconsin Newspress, Inc. v. School Dist. of Sheboygan Falls*, 199 Wis. 2d 768, 546 N.W.2d 143 (1996), was "whether all disciplinary or personnel records of public employees are exempted from the open records law." *Id.* at 774. Wisconsin Newspress, Inc. and another newspaper filed an open records request seeking the release of records maintained by the School District of Sheboygan Falls relating to disciplinary action taken against a school district administrator. *Id.* at 773–74. After examining numerous cases addressing the disclosability of disciplinary or personnel records and the statutory language of the open records law, the supreme court concluded that there is no blanket exception under the open records law for public employee or personnel records. *Id.* at

775–82. The court then, after conducting the common law balancing test, concluded that the public's interest in information about misconduct by public officials weighed more heavily in that case against the reputational harm a subject of a records request may suffer. *Id.* at 786–88.

¶ 25. In *Woznicki v. Erickson*, 202 Wis. 2d 178, 549 N.W.2d 699 (1996), the supreme court continued to recognize that there is no blanket exception to public employee disciplinary and personnel records. *Id.* at 183 (citing *Wisconsin Newspress, Inc.*, 199 Wis. 2d at 769). The subject of the open records request in *Woznicki*, an employee of the local school district, was charged with having consensual sex with a minor over the age of sixteen. *Id.* at 181–82. Similarly, in *Kailin*, the records request subject was an elementary school principal alleged to have had inappropriate physical contact with certain students. *Kailin*, 226 Wis. 2d at 138. Following an investigation conducted by the school district, authorities agreed that Kailin would be reinstated. However, just before he was reinstated, he was confronted with additional and more serious allegations that occurred in the past. *Id.* at 138–39. A new investigation into these matters was instigated by the school district. *Id.* The *Wisconsin State Journal* filed an open records request seeking access to the records relating to all allegations investigated by the school district. *Id.* at 140. We concluded that the school district's records custodian properly released the records relating to Kailin's investigation, centering on the public policy set forth in Wis. Stat. § 19.31, that " 'all persons are entitled to the greatest possible information regarding the affairs of ... the official acts of those officers and employes who represent them.' " *Id.* at 141–42, 157.

¶ 26. In *Linzmeyer*, a teacher at Neenah High School was investigated for possible inappropriate contact with female students; no criminal charges were filed and the school district did not initiate any disciplinary action against Linzmeyer. *Linzmeyer*, 254 Wis. 2d 306, ¶¶ 1, 4–5. The investigation had already been closed at the time the Appleton *Post-Crescent* newspaper filed an open records request for access to the investigation report. *Id.*, ¶ 1. The supreme court, after finding no statutory exception applied exempting the investigation report from disclosure, and after conducting the balancing test taking into consideration the pros and cons of releasing police investigation reports and of releasing information that could potentially harm an individual's reputation, concluded that the public's right to know about possible misconduct of its government employees and officials, especially those put in positions of trust, outweighs any potential harm to the subject of the open records request. *Id.*, ¶¶ 8, 18, 23, 33–38, 43.

¶ 27. In *Local 2489*, we explained that the misconduct investigated in that case involving employees of the Rock County Sheriff's Department " 'allegedly occurred in the location where the public has entrusted [the employees] to work and during the performance of [their] public duties, and therefore should be more subject to public scrutiny.' " *Local 2489*, 277 Wis. 2d 208, ¶ 27 (quoting *Linzmeyer*, 254 Wis. 2d 306, ¶ 28). The public employees in *Local 2489* were investigated and disciplined for using department computers to view inappropriate internet images. *Local 2489*, 277 Wis. 2d 208, ¶ 5.

¶ 28. This line of cases plainly demonstrates the great importance of disclosing disciplinary records of

274

public employees and officials where the conduct involves violations of the law or significant work rules. Kroeplin's construction of Wis. Stat. § 19.36(10)(d) would eliminate the holdings of extensive case law on disclosing these type of records by reading into the language of the subsection the implication that the legislature intended to abrogate this important public policy. Abrogation by implication is not, however, the way one would expect the legislature to signal that it is making a significant change in the common law on disclosing disciplinary records of public employees or officials. As the supreme court in *Hathaway* explained, "[i]t would be contrary to general well established principles of freedom-of-information statutes to hold that, by implication only, any type of record can be held from public inspection." *Hathaway*, 116 Wis. 2d at 397. Exceptions to disclosure requirements must be explicit. *Id.*

¶ 29. Kroeplin also contends in his reply brief that all *investigative* records relating to his possible misconduct are exempt under Wis. Stat. § 19.36(10)(d). This contention rests on the same grounds as his argument for excluding the *disciplinary* records under the subsection. Thus, we reject his argument as it relates to the investigative records for the same reasons we rejected his argument that his disciplinary records were exempt under § 19.36(10)(d).

¶ 30. There is an additional reason to reject Kroeplin's argument that Wis. Stat. § 19.36(10)(d) serves as a blanket exception for the investigative records. Interpreting § 19.36(10)(d) in conjunction with § 19.36(10)(b), the DNR argues that subsection (10)(b) does not apply to disciplinary records; rather, as the DNR points out, subsection (10)(b) applies only to records of ongoing investigations into an employee's

possible misconduct. Consequently, the DNR asserts, if subsection (10)(d) is read in harmony with subsection (10)(b), one cannot plausibly interpret (10)(d) as creating a blanket exception for investigative records. We agree.

¶ 31. WISCONSIN STAT. § 19.36(10)(b) codifies common law standards[2] and continues our tradition of keeping records related to misconduct investigations closed while they are ongoing, but providing public oversight over misconduct investigations once the investigations have concluded. Once a misconduct investigation has concluded, those records may be disclosed to the public, subject to the common law balancing test. The text of § 19.36(10)(b) is unambiguous and provides in relevant part that "[i]nformation relating to the current investigation of . . . possible misconduct connected with employment by an employee prior to disposition of the investigation" shall not be disclosed, except to an employee or an employee's representative. WIS. STAT. § 19.36(10)(b). We have construed this sub-

---

[2] *See Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 438, 279 N.W.2d 179 (1979) (affirming strong presumption of openness of arrest records, which may be overridden only in limited circumstances, e.g., "in the investigation of pending or proposed criminal charges"); *State ex rel. Journal/Sentinel v. Arreola*, 207 Wis. 2d 496, 514, 558 N.W.2d 670 (Ct. App. 1996) (some portions of record may be withheld "in order to maintain the effectiveness of ongoing investigations"); *Wisconsin State Journal v. University of Wisconsin-Platteville*, 160 Wis. 2d. 31, 41–42, 465 N.W. 2d 266 (Ct. App. 1990) ("We recognize the public interest in conducting closed meetings to investigate allegations of misconduct against specific persons which, if discussed in public, would be likely to have a substantial adverse effect upon their reputation," but once the investigation is over, records may be disclosed.).

section to mean that investigation records of possible employee misconduct shall not be released to the public while the investigation is underway. *Local 2489*, 277 Wis. 2d 208, ¶ 15. Put another way, records of investigations into possible employee misconduct may be released, subject to the common law balancing test, once the investigation has concluded. An investigation has concluded or "achieves its 'disposition' when the authority acts to impose discipline on an employee as a result of the investigation . . . ." *Id.*

¶ 32. Based on the plain and unambiguous language of Wis. Stat. § 19.36(10)(b) and our holding in *Local 2489*, we conclude that a public employee's investigation records are not exempt from disclosure under § 19.36(10)(d). Subsection (10)(b) is the only exception to the open records law relating to investigations of possible employee misconduct. Consequently, because there is no dispute that the investigation records at issue here were generated as a result of an investigation into allegations of possible misconduct by Kroeplin, and because there is no dispute that the investigation had achieved its disposition when The Lakeland Times filed its open records request, we easily conclude that these records are not exempt from public disclosure under either § 19.36(10)(b) or (d), subject to the common law balancing test.

¶ 33. We also note, as does the DNR, that the notice requirements under Wis. Stat. § 19.356(2)(a), enacted at the same time as Wis. Stat. § 19.36(10), provide another basis supporting our conclusion that § 19.36(10)(d) does not apply to Kroeplin's investigative and disciplinary records. Section 19.356(2)(a) requires an authority to give notice to the employee who is the subject of the open records request of its intent to

disclose certain records, which include records "containing information relating to an employee that is created or kept by the authority and that is the result of an investigation into a disciplinary matter involving the employee or possible employment-related violation by the employee of a statute, ordinance, regulation, or policy of the employee's employer." WIS. STAT. § 19.356(2)(a)1. This statute evinces a legislative intent to disclose public employee personnel records of the type involved in this case. Had the legislature intended otherwise, the legislature would not have required an employer to provide notice under § 19.356(2)(a) to the employee that it was intending to release these types of records. *See Kalal,* 271 Wis. 2d 633, ¶ 46 (we are to interpret a statute in the context within which it is used, "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results").

¶ 34. For the reasons we have explained above, we reject Kroeplin's interpretation of WIS. STAT. § 19.36(10)(d) as creating a blanket exemption for misconduct investigation and disciplinary records.

## C. WISCONSIN STAT. § 19.36(10)(d) Does Not Exempt Evaluative Judgments From Disclosure

¶ 35. We next turn to consider the DNR's arguments that WIS. STAT. § 19.36(10)(d) excepts the information it redacted from the requested records from disclosure.[3] The DNR argues that WIS. STAT. § 19.36(10)(d) should be read as creating a distinction

---

[3] The DNR makes two other arguments, both of which are without merit. The DNR argues that the language of WIS. STAT.

between factual information, which it asserts may be disclosed, and evaluative judgments, which it asserts are exempt from disclosure under the subsection.[4] We

§ 19.36(10)(d) suggests that the information used for staff management purposes must be used "within a finite temporal period." There is no indication that the legislature intended a construction of § 19.36(10)(d) that turns, in part or in whole, on a distinction of whether the information related to staff management planning was used in the past, is being used now, or will be used in the foreseeable or unforeseeable future. The DNR also argues that because § 19.36(10)(d) excepts "information" rather than a "record" from disclosure, a records custodian must analyze a record to determine which parts are disclosable to the public and to redact the information that is not disclosable. We recognize that an authority releasing a record in response to an open records request is required under § 19.36(6) to sort the nondisclosable information from the disclosable information and redact the information accordingly. However, the DNR does not tell us why this obligation to redact nondisclosable information from records matters in how we construe and apply § 19.36(10)(d), and we see none.

We also observe that the DNR provided several reasons in its denial letter for rejecting The Lakeland Times' open records request that it does not argue on appeal: the public policy in Wis. Stat. § 230.13(1)(c) explicitly recognizes that the disciplinary records of individual state employees may properly be withheld from the public; there are other statutes expressing "trepidation" in the release of disciplinary information concerning public employees, such as Wis. Stat. § 19.85(1)(b) and Wis. Stat. § 103.13; the prospect of releasing disciplinary records to the public would discourage certain persons from seeking or continuing in public employment; and releasing the documents would have a chilling effect on Kroeplin's ability to enforce the law effectively. We deem these reasons abandoned and we therefore consider them no further.

[4] The DNR relies on *Arreola* in formulating its construction of Wis. Stat. § 19.36(10)(d). While it is true that in *Arreola* we found the disclosure of information to be benign where it was

reject this argument. The DNR fails to provide a workable framework in support of this theory. The DNR does not explain how this theory would apply in a case such as this. We note that in practice, the DNR itself does not appear to apply its own theory of statutory construction in making redactions to Kroeplin's records. For example, some evaluative comments are among those not redacted, whereby a voluminous number of facts have been redacted. In addition, nothing in the text of § 19.36(10)(d) supports this approach.

## II. Public Interest Balancing Test

■

¶ 36. Once it is determined that no statutory or common law exception applies, a records custodian can overcome the strong presumption favoring openness by establishing that the public policy favoring disclosure is outweighed by an even stronger public interest favoring nondisclosure. *Hempel*, 284 Wis. 2d 162, ¶ 83; *see also* WIS. STAT. § 19.356(6). Applying the balancing test presents a question of law, which we review de novo. *Woznicki*, 202 Wis. 2d at 183.

■

¶ 37. The balancing test is a two step analysis:

'First, we must decide if the trial court correctly assessed whether the custodian's denial of access was

---

purely factual in nature, unlike this case, it did not involve disclosure of records pertaining to misconduct information. *Arreola*, 207 Wis. 2d at 505–06, 514. In addition, *Arreola* predated the 2003 amendments that created the § 19.36 disclosure exemptions, was not explicitly codified by the amendments, and there is no indication in WIS. STAT. § 19.36(10)(d)'s legislative history that § 19.36(10)(d) was meant to codify this aspect of the *Arreola* decision and turn it into a bright line rule. *See* 2003 Wis. Act 47.

> made with the requisite specificity. Second, we determine whether the stated reasons are sufficient to permit withholding, itself a two-step analysis. Here, our inquiry is: (1) did the trial court make a factual determination supported by the record of whether the documents implicate the public interests in secrecy asserted by the custodians and, if so, (2) do the countervailing interests outweigh the public interest in release.'

*Wisconsin Newspress, Inc.*, 199 Wis. 2d at 784 (citations and quotation omitted). This is a fact-intensive inquiry, guided by the strong presumption favoring disclosure, intended to determine on a case-by-case basis whether the record sought to be released falls under the category of being an "exceptional case" warranting nondisclosure. *Hempel*, 284 Wis. 2d 162, ¶ 63. "[A]n 'exceptional case' . . . exists when the facts are such that the public policy interests favoring nondisclosure outweigh the public policy interests favoring disclosure, *notwithstanding* the strong presumption favoring disclosure." *Id.* If any part of a written disclosure request is denied, the records custodian must specify the policy reasons for denial. WIS. STAT. § 19.35(4)(b).

¶ 38. None of the parties argue that the DNR's reasons for denying access to Kroeplin's records were not " 'made with the requisite specificity.' " *Wisconsin Newspress, Inc.*, 199 Wis. 2d at 784 (citation omitted). Nor do the parties dispute that the record supports the trial court's factual determination of whether the public interests asserted by the DNR are implicated. We therefore address only the question of whether the countervailing interests of keeping the documents confidential outweigh the public interest in release.

¶ 39. In a February 3, 2005 letter to the DNR, The Lakeland Times sought access to public records relating to the license plate check requested by Kroeplin to the

Minocqua Police Department, including the DNR's conclusions and findings and supporting documents of the investigation into the incident, as well as specific disciplinary measures taken against Kroeplin. The DNR responded in a letter dated February 22, 2005, written by Randy Stark, Director of the Bureau of Law Enforcement at the DNR, first stating generally:

> To the extent that your request is for the disciplinary measures taken against Warden Kroeplin, we will initiate the procedures required by s. 19.356(2), Stats., and give Warden Kroeplin notice of our intent to release portions of the disciplinary letter he received and portions of an interdepartmental disciplinary recommendation letter. I am declining to provide you with the balance of the materials requested as doing so would adversely impact the privacy and reputational interests of Mr. Kroeplin.

Stark then provided more specific reasons for withholding redacted portions of the investigative and disciplinary records, including:

> a compelling public interest in allowing management to engage in frank discussions of inappropriate job-related actions with agency employees and to protect the reputations of those employees, especially when the employee is a law enforcement officer.

> The public policy expressed in section 230.13(1)(c), Wis. Stats., explicitly recognizes that the disciplinary records of individual state civil service employees may properly be withheld from public release. Other statutes expressing trepidation in the release of disciplinary information concerning specific employees include sections 19.36(10)(a) to (d) (employment-related exceptions to the public records statute), 19.85(1)(b) (exemption to the open meetings statute for consideration of public employee discipline) and 103.13 (insuring access

to employment records by an affected employee where access by others could legitimately be restricted). Section 19.36(10)(d), Stats., may even reflect an absolute exemption from the public records law as the materials you have requested will in all likelihood be noted in future performance evaluations.

The release of [] all records of public employees who have been subject to discipline would discourage public employers from imposing corrective disciplinary sanctions in the first place and would discourage employees who have been disciplined from acknowledging and correcting their behavior and continuing their public employment. The prospect of having disciplinary records released generally to the public would ultimately discourage competent, conscientious, well-motivated persons from seeking or continuing in public employment . . . . Mr. Kroeplin is employed as a law enforcement officer. Honoring your request could unduly damage his reputation as an officer and could have a chilling effect on his ability to enforce the law effectively . . . .

¶ 40. The DNR first argues that the redacted information The Lakeland Times seeks to obtain is the type of information the court determined may be properly withheld in *State ex rel. Journal/Sentinel v. Arreola*, 207 Wis. 2d 496, 514, 558 N.W.2d 670 (Ct. App. 1996) (holding that some portions of record may be withheld "in order to maintain the effectiveness of ongoing investigations"). More specifically, the DNR asserts that the public's interest in not disclosing supervisory judgments, opinions, recommendations and other similar information outweighs the presumption of openness. We reject this argument.

¶ 41. The DNR acknowledges that *Arreola* addressed an open records request of an ongoing investigation, and then asserts that the reasons for nondisclo-

sure expressed in *Arreola* apply with equal force to this case. The DNR fails to explain why we should extend the court's reasoning in *Arreola* to the circumstances presented here, where the investigation has been completed. In addition, we emphasized in *Arreola* that our ruling was limited to the facts of that case. *See id.* at 513. The issue presented in *Arreola*, whether records of ongoing investigations into possible police mishandling of firearms should be held confidential, is not present in this case. Thus, *Arreola* does not help us resolve the question before us.

¶ 42. The DNR next argues that the public's interest in a fair employee disciplinary process and in promoting open communication between a supervisor and an employee outweigh the public's interest in disclosure. As we have noted, Stark stated in his denial letter to The Lakeland Times that there is "a compelling public interest in allowing management to engage in frank discussions of inappropriate job-related actions with agency employees" and that release of this information "would discourage employees who have been disciplined from acknowledging and correcting their behavior and continuing their public employment."

¶ 43. However, as The Lakeland Times points out, the DNR's above reason for denying public access to the requested documents is not specific to the particular documents in this case. Rather, the proferred reason appears to apply generally to all disciplinary records, not just Kroeplin's. The DNR misses the mark. The question is whether excepting *Kroeplin's* disciplinary records would discourage him or others similarly situated from engaging in open communication with their supervisors, and whether the interest in promoting

such open communication outweighs the public's interest in knowing about allegations of wrongdoing by law enforcement officers.

¶ 44. There is no debate that Kroeplin, as a warden with the DNR, assumes a quasi-law enforcement role and therefore is subject to scrutiny because he is in a position of trust. *Local 2489*, 277 Wis. 2d 208, ¶ 26. When individuals become public employees, especially in a law enforcement capacity, they should expect closer public scrutiny, which includes the real possibility that disciplinary records may be released to the public. *Id.*, ¶ 27; *see also Arreola*, 207 Wis. 2d at 515. When an individual becomes a law enforcement officer, that individual should expect that his or her conduct will be subject to greater scrutiny. That is the nature of the job. Moreover, the DNR has not established that in the case of disclosing Kroeplin's records specifically, the degree of scrutiny would so far exceed the norm in cases involving employee-management communication that it would have a chilling effect detrimental to the public interest to the point of outweighing the strong public interest in disclosure of such information. We are not persuaded that the public's interest in encouraging open and frank discussions between supervisors and disciplined employees outweighs the public's interest in being well informed about the circumstances surrounding a law enforcement officer's discipline for conduct that violates a significant work rule.

¶ 45. We also reject the DNR's argument that releasing "raw investigative data and unsubstantiated references to a different but incomplete investigation by another agency" would unduly damage Kroeplin's reputation. The DNR argues that the disclosure of

certain records containing speculative, unsubstantiated and uncorroborated information about a "separate, apparently ongoing investigation by another agency" would be highly damaging to Kroeplin's reputational interest. Those records involve an investigation into possible criminal misconduct of Kroeplin's nephew. We note that the DNR made no reference to these records in its denial letter to The Lakeland Times and at oral argument the DNR conceded that it did not specify this as one of the reasons for denying the newspaper's request. *See Wisconsin Newspress, Inc.*, 199 Wis. 2d at 784 (reasons for denial should be stated with specificity); *see also* WIS. STAT. § 19.35(4)(b). The DNR also conceded at oral argument that it never told The Lakeland Times that the request for these records exceeded the scope of records relating to Kroeplin's own conduct in seeking an auto license plate check. Consequently, we will not address this issue any further.

¶ 46. Kroeplin makes two other arguments. He first contends that the public's interest in protecting his reputation and privacy outweighs the public's interest in disclosing the requested records. We disagree. As we have discussed, law enforcement officers "necessarily relinquish certain privacy [and reputational] rights [by virtue of the amount of trust society places in them] and must be subject to public scrutiny." *Arreola*, 207 Wis. 2d at 515; *see also State ex rel. Bilder v. Township of Delavan*, 112 Wis. 2d 539, 557, 334 N.W.2d 252 (1983) ("accepting his public position [as police chief] Bilder has, to a large extent, relinquished his right to keep confidential activities directly relating to his employment as a public law enforcement official"). We recognize that some cases have held that privacy-related public interests may outweigh the public interest in disclosure—for example, if disclosure would threaten

both personal privacy and safety of employees, *Ledford*, 195 Wis. 2d at 250–51; or if other privacy protections are already established by law, e.g., attorney-client privilege, *see Wisconsin Newspress, Inc.*, 199 Wis. 2d at 782–83. However, this is not such a case. The public interest in being informed both of the potential misconduct by law enforcement officers and of the extent to which such misconduct was properly investigated is particularly compelling, mitigating even more strongly against Kroeplin's privacy interests.

¶ 47. As for Kroeplin's reputation, we observe that this case is similar to *Kailin*, where we dismissed a similar reputation argument as not compelling enough to outweigh the public interest in disclosure because the information the record subject sought to withhold was already in the public domain. *Kailin*, 226 Wis. 2d at 148. Similarly, we have inspected *in camera* the documents Kroeplin seeks to keep confidential and conclude that The Lakeland Times has already reported most of the pertinent facts that the DNR is refusing to disclose which could potentially harm Kroeplin's reputation. As we said in *Kailin*, with the information that would pose the most potential harm to Kroeplin's reputation already in the public domain, "we cannot 'un-ring the bell.' " *Id.* This case is also analogous to *Bilder*, where a law enforcement officer unsuccessfully asserted a public interest in protecting his reputation in an attempt to prevent disclosure. The court reasoned:

> Bilder is not an ordinary citizen. He is a public official subject to close public scrutiny. The documents in issue apparently contain information relating directly to Bilder's professional conduct as police chief. By accepting his public position Bilder has, to a large extent, relinquished his right to keep confidential activities directly relating to his employment as a public law

enforcement official. The police chief cannot thwart the public's interest in his official conduct by claiming that he expects the same kind of protection of reputation accorded an ordinary citizen. Even if Bilder could explain why his reputation interest should be protected, he does not explain how opening the documents in issue here will have an incremental effect on his reputation when the public must already know, even by virtue of proceedings he pursues in this court, that he has been suspended as police chief and that he has been charged with misconduct or questionable conduct.

*Bilder*, 112 Wis. 2d at 557–58 (citations omitted). Kroeplin has not established that his case is any more exceptional than Bilder's, justifying nondisclosure in the name of protecting his reputation.

¶ 48. Kroeplin attempts to distinguish his situation from that of a public employee in a high profile position, who, in his view of the law, "should have a much lower expectation of privacy regarding his or her employment records" than a "low-ranking" law enforcement officer. He also argues that the work rule violation at issue in this case is less compelling than the public's interest in the discharge of firearms by law enforcement officers, which was the subject of the open records request in *Arreola*. We are not persuaded.

¶ 49. Kroeplin ignores other cases involving "lower profile employees" such as school teachers disciplined based on allegations of improper sexual contact with students, *Linzmeyer*, 254 Wis. 2d 306, or non-law enforcement employees of a sheriff's department, *Local 2489*, 277 Wis. 2d 208. We also reject Kroeplin's argument that the facts here are less compelling than those in *Arreola*. The allegations in this case involve the possibility of criminal misconduct, and at a minimum, a violation of a significant work rule relating to the

288

proper circumstances under which a law enforcement officer may request a license plate check. These allegations go to the heart of the trust the public places in law enforcement officers such as Kroeplin. The distinctions Kroeplin attempts to make do not persuade us that nondisclosure is appropriate.

¶ 50. The second argument Kroeplin makes is that the public's interest in the need to conduct thorough investigations by law enforcement officers outweighs the public's interest in disclosure. He asserts that investigators of public employee misconduct and individuals reviewing employee performance "would be less than candid if they feared that their appraisals might be available for public inspection." He argues that public employers would abdicate their duty to create full and complete records of investigations into employee misconduct. Kroeplin looks to *Arreola* and *Cohen* for support. This argument lacks merit.

¶ 51. Kroeplin fails to point to any evidence that disclosing records created in the course of investigating employee misconduct and of the subsequent disciplinary action taken would have or has the effect he predicts. In addition, it is unlikely that a supervisor intent on changing the behavior of a subordinate would be anything less than candid. It is a supervisor's job to ensure that his or her employer's interests are adequately protected and that the goals of that employer are reached. We are not persuaded that a conscientious and motivated supervisor would act in any way other than in the employer's best interest, even if that supervisor was aware that information gathered from investigating possible employee misconduct and regarding the disciplinary action taken would be subject to public disclosure.[5]

---

[5] Kroeplin appears to include a third argument. He acknowledges that the public has a strong interest in accessing

¶ 52. In sum, "[t]he public has a particularly strong interest in being informed about public officials who have been 'derelict in [their] duty.' " *Wisconsin Newspress, Inc.*, 199 Wis. 2d at 786 (citations omitted). "The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." WIS. STAT. § 19.31. This is not such an exceptional case. The DNR and Kroeplin have failed to establish that under the particular facts of this case, the policy reasons for nondisclosure outweigh the strong presumption of openness and critical importance of public access to information regarding the investigation into possible misconduct by Kroeplin and of the disciplinary action taken as a result thereof. Not only is the public entitled to know about Kroeplin's actions, but, perhaps even more critically, there is a strong need for public oversight to ensure that the DNR's investigation was thoroughly conducted as well. Public access to records of completed investigations of misconduct by public officials and employees is critical in helping ensure that public employers, in this case the DNR,

---

records relating to employee discipline where the employee is charged with a crime or with a serious work rule violation. However, he asserts, because he was not charged with a crime or because, at least in his view, the DNR did not accuse him of serious misconduct, the public's interest in the disclosure of his documents is slight. We reject this argument. We recognize that Kroeplin has not been charged with a crime, at least at the time this opinion was written. However, it is not up to Kroeplin to determine whether a particular work rule violation is serious. Here, we view it as serious that Kroeplin was alleged to have violated an important work rule detailing the circumstances under which a law enforcement officer could obtain what is otherwise confidential information by requesting a license plate check.

conduct thorough and meaningful investigations. Openness and disclosure are conducive to better accountability. If public employers know that the investigations they perform are subject to public review, common sense dictates that they will be more diligent in ensuring that charges of potential misconduct are thoroughly investigated, and that the appropriate discipline is imposed, than they would be if they were not so held accountable to the public.

## CONCLUSION

¶ 53. We conclude that there is no statutory or common law exception barring the disclosure of the records requested by The Lakeland Times. We also conclude, after applying the common law balancing test, that the public's strong interest in accessing these records is not outweighed in any way by any of the reasons offered by the DNR for preventing disclosure.

*By the Court.*—Judgments and orders affirmed.