Sᴛᴀᴛᴇ of Wisconsin ᴇx ʀᴇʟ. Korry L. Aʀᴅᴇʟʟ, Petitioner-Appellant,†

v.

Mɪʟᴡᴀᴜᴋᴇᴇ Bᴏᴀʀᴅ ᴏꜰ Sᴄʜᴏᴏʟ Dɪʀᴇᴄᴛᴏʀs and Lynne A. Sobczak, Respondents-Respondents.

Court of Appeals

*No. 2013AP1650. Submitted on briefs March 4, 2014.
—Decided May 6, 2014.*

2014 WI App 66

(Also reported in 849 N.W.2d 894.)

† Petition for Review filed.

472

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Rebecca K. Mason* of *Rebecca Mason Law LLC*, Racine.

On behalf of the respondents-respondents, the cause was submitted on the brief of *Melanie J. Rutledge*, assistant city attorney, and *Grant F. Langley*, city attorney.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. BRENNAN, J.   Korry L. Ardell appeals from a circuit court order denying his request for a writ of mandamus. Ardell sought disclosure of certain public records from the Milwaukee Board of School Directors ("MBSD") relating to an MBSD employee. The circuit court denied Ardell's request, concluding that the MBSD's concern for the safety and welfare of its employee outweighed the public policy interest in disclosure. Because Ardell's violent history against the MBSD employee is well-documented, and because it is clear that Ardell's intent in requesting the information was inconsistent with the purpose of the open records law, we affirm the circuit court.

474

## BACKGROUND

¶ 2.   In November 2012, Ardell made a public records request, pursuant to Wis. Stat. § 19.35 (2011–12),[1] for the following records:   (1) records of sick days or missed days for a public school employee; (2) notes or disciplinary actions for that same employee; and (3) investigations conducted in regard to that employee.

¶ 3.   Upon reviewing Ardell's request and evaluating it under the public records balancing test, the MBSD initially determined that the balance tipped in favor of disclosing the requested records subject to certain redactions. The MBSD later reconsidered its initial disclosure decision and denied Ardell's request, citing a domestic abuse injunction issued by a Milwaukee County Court Commissioner that prohibited Ardell from having any contact with the subject employee and a criminal case in which Ardell pled guilty to two counts of violating the injunction. The MBSD told Ardell that it had concluded that "the public interest in protecting the safety and welfare of the employee clearly outweighs the public interest in disclosure in this instance."[2]

¶ 4.   In March 2013, Ardell filed a petition for a writ of mandamus seeking the immediate release of the requested public records. The MBSD filed a motion to quash the petition. The circuit court found that the MBSD correctly conducted the required balancing test when it concluded that, in this instance, the public

---

[1] All references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[2] The parties disagree as to whether the domestic violence injunction had expired at the time Ardell made his open records request. We need not resolve that dispute because it is irrelevant to our decision in this case.

policy reasons in favor of nondisclosure outweighed those in favor of disclosure. Ardell appeals.

## DISCUSSION

¶ 5.   The issue before this court is whether the importance of protecting the safety and welfare of the MBSD employee outweighs the presumption of disclosure. We conclude that it does because the facts in this case demonstrate that Ardell has physically harmed the MBSD employee in the past and that his purpose in requesting the documents was inconsistent with the open records law's interest in government transparency. As such, Ardell has no right to the requested documents and the MBSD has no duty to disclose them.

¶ 6.   "[M]andamus is an exceptional remedy . . . 'only to be applied in extraordinary cases where there is no other adequate remedy.' " *Moore v. Stahowiak*, 212 Wis. 2d 744, 747, 569 N.W.2d 711 (Ct. App. 1997) (citation and emphasis omitted). A party petitioning for a writ of mandamus must show that:   " '(1) the writ is based on a clear, specific legal right which is free from substantial doubt; (2) the duty sought to be enforced is positive and plain; (3) substantial damage will result if the duty is not performed; and (4) there is no other adequate remedy at law." ' *Hearst-Argyle Stations, Inc. v. Board of Zoning Appeals of the City of Milwaukee*, 2003 WI App 48, ¶ 14, 260 Wis. 2d 494, 659 N.W.2d 424 (citation omitted).

¶ 7.   "Where a circuit court, determining a petition for writ of mandamus, has interpreted Wisconsin's open records law, *see* WIS. STAT. §§ 19.31 through 19.39, and

476

·has applied that law to undisputed facts, we review the circuit court's decision *de novo.*" *State ex rel. Milwaukee Police Ass'n v. Jones,* 2000 WI App 146, ¶ 11, 237 Wis. 2d 840, 615 N.W.2d 190. We do so ever mindful of the legislature's declaration of policy that the open records law must " 'be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business.' " *Id.* (citing § 19.31) (emphasis omitted).

■■

¶ 8. WISCONSIN STAT. § 19.31 sets forth this policy declaration regarding open records:

> In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. Further, providing persons with such information is declared to be an essential function of a representative government and an integral part of the routine duties of officers and employees whose responsibility it is to provide such information. To that end, ss. 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

"The open records law serves one of the basic tenets of our democratic system by providing an opportunity for public oversight of the workings of government." *Nichols v. Bennett,* 199 Wis. 2d 268, 273, 544 N.W.2d 428 (1996). "This state recognizes a presumption of accessibility to public records, reflected in both the statutes and in our case law." *Id.*

¶ 9.  The presumption favoring disclosure of public records, while strong, is not absolute. *Linzmeyer v. Forcey*, 2002 WI 84, ¶ 11, 254 Wis. 2d 306, 646 N.W.2d 811. "Access to records may be denied where there is a specific statutory exemption to disclosure, or where there is a common law or public policy exception." *Watton v. Hegerty*, 2008 WI 74, ¶ 10, 311 Wis. 2d 52, 751 N.W.2d 369 (internal citation omitted). Here, the MBSD does not argue that a statutory or common law exemption applies to bar disclosure, but rather that public policy does so. As such, we must look to "whether the strong presumption favoring access and disclosure is overcome by some even stronger public policy favoring limited access or nondisclosure." *See Hempel v. City of Baraboo*, 2005 WI 120, ¶ 4, 284 Wis. 2d 162, 699 N.W.2d 551. We conclude that public policy, that is, ensuring the safety and welfare of the MBSD employee, does overcome the presumption of access in this instance.

■

¶ 10.  To begin, the evidence in this case demonstrates that the MBSD has documented and well-founded safety concerns for its employee. *Cf. Linzmeyer*, 254 Wis. 2d 306, ¶ 30 (noting that concern for the safety of the persons involved in a report is a strong public policy reason that works against release); *Klein v. Wisconsin Resource Ctr.*, 218 Wis. 2d 487, 489–90, 496–97, 582 N.W.2d 44 (Ct. App. 1998) (concluding that a state employee's personnel file should not be released to patients committed to a state facility as sexually violent persons, despite the presumption favoring public access to records, based upon concerns for the safety of employee and her family); *State ex rel. Morke v. Record Custodian, Dep't of Health & Soc. Servs.*, 159

Wis. 2d 722, 726, 465 N.W.2d 235 (Ct. App. 1990) (concluding that the records custodian properly denied a prisoner access to public records based upon concern for the safety and well-being of the prison staff and their families). The determination of whether there is a safety concern that outweighs the presumption of disclosure is a fact-intensive inquiry that we determine on a case-by-case basis. *Kroeplin v. DNR*, 2006 WI App 227, ¶ 37, 297 Wis. 2d 254, 725 N.W.2d 286. The facts in this case show that the MBSD's concerns for its employee were valid and outweigh disclosure.

¶ 11. The record shows that injunction hearings were held on July 23, 2008, and August 7, 2008, before two family court commissioners, regarding allegations that Ardell was involved in a violent interaction with the MBSD employee. Following a *de novo* review hearing before a circuit court judge, on October 23, 2008, a circuit court issued a domestic abuse injunction prohibiting Ardell, among other things, "from committing acts or threats of domestic abuse against" the MBSD employee and from "contacting or causing any person other than a party's attorney or law enforcement officer to contact" the MBSD employee. In November 2009, Ardell pled guilty to two counts of violating the domestic abuse injunction and was sentenced to serve time in the House of Correction.

¶ 12. The circuit court, when considering Ardell's petition for the writ of mandamus, set forth the facts of this case thusly:

> In this case, a family court commissioner found that there had been a violent altercation between Mr. Ardell and the employee at issue, and that domestic violence occurred and was likely to occur again. A domestic abuse injunction was issued, which prohibited

Mr. Ardell from contacting the employee. At the injunction hearing, the court stated as follows:

> I know you have a de novo review. I think you could sell tickets to that. I'd love to see how – how - how you even try to convince a judge that . . . she's not the victim and that you are.

> She's very credible. She's very convincing. You're totally incredible . . . .

> I think this was a total waste of time. If I had the opportunity to charge you court costs for the frivolous action, I would.

The court further found that the MBSD employee was credible when she testified about her fear, panic and other emotions. According to the court:

> I find that there was clearly an altercation on the night of July 8, that altercation, however, apparently began by Mr. Ardell hitting [the employee] on the side of the head and it may have well continued with punches and blows and so on.

> Later, Mr. Ardell pled guilty to two counts of knowingly violating the domestic abuse injunction and was sentenced to nine months in the House of Correction.

(Alterations in circuit court opinion.) Ardell does not dispute any of these findings on appeal.

¶ 13.   When Ardell's acts of violence and harassment of the MBSD employee, as well as his disregard for the domestic abuse injunction, are juxtaposed against the purpose of the open records law—that is, to provide an opportunity for public oversight of the workings of government—it is clear that nondisclosure was prudent in this case. It is plain from Ardell's history with the MBSD employee that his purpose in request-

ing the employment records was not a legitimate one; rather, his intent was to continue to harass and intimidate the MBSD employee. In committing acts of violence against the MBSD employee and ignoring the domestic abuse injunction, he forfeited his right to the documents he requests.

¶ 14. In short, we conclude that the facts of this case are exceptional, such that the public policy reasons favoring nondisclosure outweigh those favoring disclosure, and we affirm the circuit court. *See Hempel*, 284 Wis. 2d 162, ¶ 4. Because Ardell's violent history with the MBSD employee reveals that his intent in this case was to harass the employee, he has no clear, specific legal right to the documents he requests, nor does the MBSD have a positive and plain duty to reveal those documents. *See Hearst-Argyle Stations*, 260 Wis. 2d 494, ¶ 14.

¶ 15. Ardell argues that the circuit court's decision that the safety and welfare of the employee is paramount in this case was in error because the circuit court: (1) improperly considered the identity of the requester; (2) failed to identify the safety concerns raised by the requested documents after the MBSD's personal information was redacted; (3) failed to conduct an *in camera* review of the requested documents; and (4) failed to require the subject of the inquiry to formally raise her challenge to the documents' release pursuant to Wis. Stat. § 19.356. We disagree.

¶ 16. First, we conclude that Ardell's identity is relevant to our decision in this case. Ardell disagrees with this conclusion and argues that *Levin v. Board of Regents of the University of Wisconsin System*, 2003 WI App 181, 266 Wis. 2d 481, 668 N.W.2d 779, stands for the proposition that identity is never a proper consideration when determining whether information should

be released under the Wisconsin open records law. Citing WIS. STAT. § 19.32(3), Ardell asserts that the only exception to this hard-and-fast rule is for committed and incarcerated persons. *See id.* (defining a requester to include "any person who requests inspection or copies of a record, except a committed or incarcerated person . . . ."). We disagree.

¶ 17.   Indeed, *Levin* stands for the general proposition "that the identity and purpose of the requester of public records is not a part of the balancing test to be applied in determining whether to release records." *Id.*, 266 Wis. 2d 481, ¶ 14. However, as we set forth above, the determination of whether there is a safety concern that outweighs the presumption of disclosure is a fact-intensive inquiry that we determine on a case-by-case basis. *See Kroeplin*, 297 Wis. 2d 254, ¶ 37. In this case, Ardell has not aligned himself with the general class of persons who request disclosure of public records in order to ensure transparent government. Rather, Ardell's violent history with the MBSD employee, including his two convictions for violations of the domestic abuse injunction, align him more closely with the class of persons statutorily denied access to public records for safety reasons, that is, committed and incarcerated persons. *See* WIS. STAT. § 19.32(3). Ardell has forfeited his right to disclosure of the MBSD employee's employment records by demonstrating an intent to hurt the employee, and it would be contrary to common sense and public policy to permit him to use the open records law to continue his course of intimidation and harassment.

¶ 18.   We also reject Ardell's assertion that the circuit court was required to review the requested records *in camera* prior to determining whether they

482

should be released in order to consider how they might be used to harm the employee. Ardell complains that neither the MBSD nor the circuit court articulated what information in the requested documents Ardell could use to harm the MBSD employee after all of the MBSD employee's personal information had been redacted.

■■

¶ 19. An *in camera* review of requested documents is not mandatory. *Village of Butler v. Cohen*, 163 Wis. 2d 819, 827, 472 N.W.2d 579 (Ct. App. 1991). We have held "that if the policy reasons the custodian lists for nondisclosure are of sufficient specificity, and if those reasons override the presumption in favor of disclosure, an *in camera* inspection is unnecessary." *Id.* Here, the MBSD stated with specificity that its reasons for rejecting Ardell's request were the domestic abuse injunction and the resulting criminal case. The circuit court denied Ardell's request for an *in camera* review of the documents, noting that "the facts are undisputed that he's a predator and she's the victim. And that he went to jail [for] it. After being warned, and he's incarcerated, and he's back out and he's being a predator again." We agree with the MBSD and the circuit court that Ardell's history of violence against the employee and violations of the domestic abuse injunction are sufficient to warrant nondisclosure without an *in camera* review. We need not speculate as to how Ardell would use the information to harm the employee. His violent history plainly demonstrates an intent to harm that is inconsistent with the purpose of open records law.

■■

¶ 20. Finally, we reject Ardell's contention that the MBSD employee was required to formally challenge

release of the documents after the MBSD provided notice and that the MBSD was not entitled to change its mind and withhold the records after a private conversation with its employee.

¶ 21. The MBSD sent correspondence to Ardell on December 11, 2012, and February 12, 2013, informing him that the MBSD planned to provide the requested records. The February 12 letter also informed Ardell that, as required by law, the custodian was providing notice to the subject of the records. Indeed, the MBSD provided the subject with such notice. After apparently engaging in a private conversation with the employee, the MBSD changed its position, and sent a letter to Ardell on February 26, 2013, denying his request in full.

¶ 22. WISCONSIN STAT. § 19.356(3) states that "[w]ithin 5 days after receipt of a notice under sub. (2) (a), a record subject may provide written notification to the authority of his or her intent to seek a court order restraining the authority from providing access to the requested record." Section 19.356(4) directs, in relevant part, that "[w]ithin 10 days after receipt of a notice under sub. (2) (a), a record subject may commence an action seeking a court order to restrain the authority from providing access to the requested record . . . ." Ardell contends that § 19.356 sets forth the *only* course of action the subject of a disclosure may engage in to prevent disclosure, to wit, to commence a court action. However, the plain language of the statute says no such thing. *See State ex rel. Kalal v. Circuit Court for Dane Cnty.*, 2004 WI 58, ¶¶ 44–45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'") (citation omitted). Rather, both § 19.356(3) and (4) state that "a record subject *may* commence an action." *See id.* (em-

phasis added); *see also Forest Cnty. v. Goode*, 219 Wis. 2d 654, 663, 579 N.W.2d 715 (1998) (We have "characterized 'may' as permissive and 'shall' as mandatory unless a different construction is required by the statute to carry out the clear intent of the legislature."). The plain language of the statute in no way discourages the subject of a records request from engaging in less litigious means to prevent disclosure nor does it prevent a records custodian from changing its mind.

¶ 23.　As such, we conclude, based on the facts of this case, including Ardell's well-documented history of violence against the MBSD employee and his violations of the domestic abuse injunction, that the MBSD properly concluded that the safety and welfare of its employee outweighed the strong presumption of disclosure of public records. As such, we affirm the circuit court.

*By the Court.*—Order affirmed.