Susan C. NICHOLS, Petitioner-Appellant,

v.

Mark H. BENNETT, Columbia County District
Attorney, Respondent-Respondent-Petitioner.

Supreme Court

*No. 93–2480. Oral argument November 30, 1995.—Decided
February 29, 1996.*

(Also reported in 544 N.W.2d 428.)

For the respondent-respondent-petitioner there briefs and oral argument by *Mark H. Bennett,* Columbia County District Attorney.

For the petitioner-appellant there was a brief by *Norma Briggs* and *Briggs Law Office,* Madison and oral argument by *Norma Briggs.*

Amicus curiae brief was filed by *Jeffrey J. Kassel* and *LaFollette & Sinykin,* Madison for the Wisconsin Newspaper Association.

JANINE P. GESKE, J.   This is a review of a published decision of the court of appeals which reversed the circuit court's order denying an open records petition for mandamus filed pursuant to Wis. Stat. § 19.37(1)(a) (1991-92).[1] The sole issue is whether open records requests made to a district attorney and the district attorney's responses to those requests are exempt from public inspection under *State ex rel. Richards v. Foust,* 165 Wis. 2d 429, 477 N.W.2d 608 (1991), because they are contained in prosecutorial files. We conclude that the requested records are subject to inspection and copying under the open records law. Although the district attorney placed these records into prosecutorial files, it is the nature of the documents and not their location which determines their status under §§ 19.31 to 19.37, the Wisconsin open records law. The court of appeals correctly held that these records do not qualify for the common law exemption described in *Foust.* We therefore affirm the court of appeals' decision.

---

[1] Unless otherwise indicated, all subsequent references are to the 1991-92 Wisconsin Statutes.

270

## FACTS

On August 28, 1992, Susan C. Nichols (Nichols), wrote to Columbia County District Attorney, Mark H. Bennett (Bennett), asking for copies of all the open records requests his office had received from January 1, 1990, until that date. She also requested copies of Bennett's responses to those requests, but made it clear that she was *not* asking for copies of the actual records he may have sent to requesters. Bennett responded on September 1, 1992, stating that although he did not have a "special file" containing the materials requested, he and his staff would attempt to obtain and promptly forward the information. Nichols sent a second letter on September 28, 1992, reiterating her initial request. In response, Bennett informed Nichols that his office had received four open records requests in the given time span. He released a copy of one of these requests because it was "not part of a prosecutorial file nor [did it] contain investigative data."

Bennett declined to provide Nichols with copies of the other three open records requests or his responses. However, in his responsive letter, he did inform Nichols of the nature of the requests and the substance of the action taken. Two of the requests had been made by defense attorneys for personnel records of police officers involved in pending prosecution cases. Bennett had forwarded these requests to the specific law enforcement agency custodians. In the remaining request, a prisoner asked for his own closed prosecution file. Bennett informed Nichols that he had responded to this request by sending a copy of the file to

the prisoner.[2] Bennett wrote that: "It is my position that you are not entitled to letters or any documents contained in the above three closed prosecutorial files or any other closed prosecution files in my office." He stated that *Foust* "holds that prosecutorial files are exempt from public access."

Nichols then filed a petition for a writ of mandamus pursuant to Wis. Stat. § 19.37(1)(a), seeking to compel Bennett to release the remaining requested documents. On March 31, 1993, the circuit court issued a memorandum decision denying Nichols' petition.[3] The court concluded that the records sought were not simply stored in, but were "*part of* closed prosecution files and as such, are exempted from disclosure under *Foust*."

Nichols appealed. The court of appeals reversed and remanded with directions that the writ of mandamus be granted on the basis that the *Foust* exemption applies only to "items that actually pertain to prosecution." *Nichols v. Bennett*, 190 Wis. 2d 360, 364, 526 N.W.2d 831 (Ct. App. 1994). The court of appeals determined that the principles underlying *Foust* limit its application to "information gathered in the course of an investigation." *Id.* This court subsequently granted Bennett's petition for review on the issue of the scope of the exception articulated in *Foust*.

■

This court is asked to determine whether open records requests are themselves exempt from access under the open records law when they are contained in a prosecutorial file. Resolution of this issue involves

---

[2] The prisoner's request and Bennett's response had occurred before the release of the *Foust* opinion.

[3] The records at issue were not inspected by the circuit court *in camera* and are not a part of the appellate record before us.

the application of the open records law to undisputed facts. This presents a question of law which we approach without deference to the conclusions of the courts below. *Mayfair Chrysler-Plymouth, Inc. v. Baldarotta*, 162 Wis. 2d 142, 155, 469 N.W.2d 638 (1991).

The open records law serves one of the basic tenets of our democratic system by providing an opportunity for public oversight of the workings of government. *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 433-34, 279 N.W.2d 179 (1979). This state recognizes a presumption of accessibility to public records, reflected in both the statutes and in our case law:

> [Sections] 19.32 to 19.37 shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied.

Wis. Stat. § 19.31. This court has summarized its approach to the open records law in the following manner:

> [T]he general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential.

*Hathaway v. Green Bay School Dist.*, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984). Further, we narrowly construe any exceptions to the general rule of disclosure.

*Fox v. Bock*, 149 Wis. 2d 403, 411, 438 N.W.2d 589 (1989).

In *Foust*, we concluded that "the common law provides an exception which protects the district attorney's files from being open to public inspection." *Foust*, 165 Wis. 2d at 433-34. We identified several grounds for protecting prosecutorial files from inspection including the need to shield anonymous statements and informants' identities in an on-going effort to encourage public cooperation in criminal investigations. *Id.* at 435. In *Foust*, we concluded that "access to data collected and placed into prosecutor files is not open to indiscriminate public view." *Id.* at 436.

Bennett argues that *Foust* creates a bright-line rule which exempts all documents contained in prosecutorial files from public access. He maintains that the court of appeals' decision "clouds the clarity and certainty" of that bright-line rule. Bennett asserts that *Foust* drew no distinction between types of records contained in prosecutorial files nor did it set forth any exceptions to the rule, and we should reject the court of appeals' attempts to do so.

We conclude that neither the purposes underlying the open records law nor the policy reasons supporting the *Foust* exemption are served by nondisclosure of the letters at issue here. The court of appeals held that a record should not be "automatically exempt merely because a custodian stores it in a closed prosecutorial file." *Nichols*, 190 Wis. 2d at 364. We agree. A prosecutor cannot shield documents subject to the open records law simply by placing them into a "prosecutorial file." It is the nature of the documents and not their location which determines their status under §§ 19.31 to 19.37.

To conclude otherwise would elevate form over substance.[4]

District Attorney Bennett, an elected public official, is the legal custodian of public records in his office. Wis. Stat. § 19.33. The declared public policy of this state is that the public is entitled to the greatest possible information concerning the official acts of its elected officials and government. Wis. Stat. § 19.31. It is "an integral part of [Bennett's] routine duties" to facilitate access to public records in his office and thereby provide the public with information about his own official acts as well as those of other government officials and employees. Wis. Stat. § 19.31.

Here, Nichols, a member of the public, is entitled to see how Bennett handles the open records demands he receives. As custodian of these records, Bennett must make available the requested open records demands and his responses to them. These records are not exempt from the open records law and cannot be shielded from disclosure.

Finally, Bennett raised the argument on appeal that compliance with Nichols' request would not be in the public's best interest because it would place an unreasonable burden upon his staff and resources. Bennett did not raise this argument at the trial court level and, more importantly, did not state it as one of the specified reasons for denying Nichols' request. As we noted in *Breier*, the custodian must "state specific

---

[4] This opinion should not be read as questioning or weakening the exception we recognized in *Foust*. We reaffirm that documents integral to the criminal investigation and prosecution process are protected "from being open to public inspection." *Foust*, 165 Wis. 2d at 434.

public-policy reasons for the refusal." *Breier*, 89 Wis. 2d at 427. It is not "this court's role to hypothesize reasons or to consider reasons for not allowing inspection which were not asserted by the custodian" and the stated reasons provide the necessary basis for review. *Id.* We therefore decline to address this argument in this review.[5]

For the reasons stated above, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed and cause is remanded with directions.

SHIRLEY S. ABRAHAMSON, J. (*concurring*). The opinion correctly concludes that the records at issue in this case were not exempt from disclosure under Wisconsin's open records law, and I therefore join the mandate. I write separately because the very reasons the opinion relies upon to reach its result warrant overturning the court's prior decision in *State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 477 N.W.2d 608 (1991).

In concluding that a prosecutor cannot shield otherwise disclosable documents merely by placing them in a prosecutorial file, the opinion correctly observes that "[i]t is the nature of the documents and not their location" which determines whether they should be disclosed. "To conclude otherwise," the opinion continues,

---

[5] Further, as pointed out in the amicus brief filed by the Wisconsin Newspaper Association, the statutes provide that an authority may impose a fee on the requester if the "actual, necessary and direct cost" of locating a record exceeds $50. *See* Wis. Stat. § 19.35(3)(c). Thus, cost of retrieval alone does not constitute an adequate reason for denial of an open records request.

"would elevate form over substance." Majority op. at 275.

Conversely, in concluding that prosecutorial files should automatically and categorically be exempt from Wisconsin's open records law, regardless of whether the files pertain to open or closed investigations, the *Foust* court did precisely what we rightly condemn today: it elevated form over substance, thereby thwarting the presumption inscribed in Wisconsin's open records law in favor "of complete public access" "in every instance." Wis. Stat. § 19.31 (1991-92).[1]

That presumption requires a careful balancing between the public interest in disclosure of the contested information and the potential harmful effect of such disclosure.[2] In conducting that balancing test, "[t]he denial of public access generally is contrary to the public interest, and only in an exceptional case may access be denied." Wis. Stat. § 19.31. In holding that a prosecutor's closed case files were exempt from public inspection, the *Foust* court failed to heed this statutory prescription.[3]

---

[1] All future references are to the 1991-92 volume of the Wisconsin Statutes.

[2] Wis. Stat. § 19.31; *Fox v. Bock*, 149 Wis. 2d 403, 411, 438 N.W.2d 589 (1989); *Hathaway v. Green Bay Sch. Dist.*, 116 Wis. 2d 388, 396-97, 342 N.W.2d 682 (1984); *Newspapers, Inc. v. Breier*, 89 Wis. 2d 417, 426-27, 279 N.W.2d 179 (1979); *State ex rel. Youmans v. Owens*, 28 Wis. 2d 672, 682-83, 137 N.W.2d 470, 139 N.W.2d 241 (1965).

[3] The open records law insures that when closed prosecutorial files contain materials which, were they disclosed, would harmfully affect the public interest, the district attorney need not release them. *See State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 439, 477 N.W.2d 608 (1991) (Abrahamson, J., dissenting).

In its effort to both salvage *Foust* and adhere to the open records statute, the court's opinion today circumvents the *Foust* court's blanket exemption for records placed in prosecutorial files by insisting that neither the purposes served by the open records law nor the policies enunciated in *Foust* itself warrant exempting the documents at issue in this case from open records requests.

While the majority insists that the exception it creates to *Foust* "should not be read as questioning or weakening" *Foust*, majority op. at 275 n.4, it is difficult to comprehend how else one might read the opinion. The opinion limits *Foust* to "documents integral to the criminal investigation and prosecution process." Majority op. at 275 n.4. This standard is nebulous and it sets the stage for future litigation as surely as *Foust* rendered inevitable the case before us today. The exception to *Foust* which the majority opinion carves out is only the first; it will not be the last.[4]

Without any authority or support in either the statutes or the common law, *Foust* unilaterally prohibits the full application of Wisconsin's open records law. Because of the irreconcilable tension between the *Foust*

[4] The *Foust* court stated that under the court's interpretation of the common-law exception to disclosure, a prosecutor need not even respond to an open records law request for access to information in a prosecutorial file. This further illustrates the tension between *Foust* and the open records act. *Foust*, 165 Wis. 2d at 437. Because the prosecutor in this case *did* respond to the request for information, this issue was not before us. Should he have declined to do so, the court could have been compelled to carve out yet another exception to *Foust*, since replying to such a request presumably does not jeopardize and is not "integral to the criminal investigation and prosecution process."

court's holding and the statute it purports to interpret and apply, the majority opinion can only grapple with *Foust's* troubled legacy by denying what that legacy means. Such contortions do not make good law. Hence rather than destroying *Foust* covertly in an effort to save it, we should avail ourselves today of the opportunity to overtly overturn it.

For the reasons set forth, I concur.