*353 ¶ 1.
PATIENCE DRAKE ROGGENSACK, C.J.
We review a decision of the court of appeals[1] affirming an order of the circuit court[2] that granted mandamus requiring Milwaukee County Sheriff David A. Clarke, Jr. (Sheriff) to provide unredacted versions of immigration detainer forms (1-247 forms) to Voces de la Frontera (Voces) pursuant to its public records request. The 1-247 forms were sent to the Sheriffs office by the United States Immigrations and Customs Enforcement (ICE) and contain immigration-related information about certain individuals held at the Milwaukee County Jail.
f 2. Our review requires us to determine whether the 1-247 forms are exempt from disclosure under Wisconsin public records law. Specifically, we decide whether there is a statutory or common-law exemption to the public records law such that the forms are exempt from disclosure. And, if there were no such exemption, we would decide whether the public interest weighs in favor of releasing or withholding the documents.
¶ 3. We conclude that 1-247 forms are statutorily exempt from disclosure according to the terms of Wisconsin public records law, and therefore, we need not reach common-law exemptions or the public interest balancing test. Stated more fully, under Wis. Stat. §§ 19.36(1)-(2),[3] any record specifically exempted from disclosure pursuant to federal law also is exempt from disclosure under Wisconsin law. Federal regulation 8 *354 C.F.R. § 236.6 (2013) precludes release of any information pertaining to individuals detained in a state or local facility and 1-247 forms contain only such information. Consequently, read together, Wis. Stat. §§ 19.36(1)-(2) and 8 C.F.R. § 236.6 exempt 1-247 forms from release under Wisconsin public records law. Furthermore, because 1-247 forms are statutorily exempt from release, the public interest balancing test has no application here.
¶ 4. Accordingly, we reverse the court of appeals.
I. BACKGROUND
¶ 5. On February 5, 2015, Voces submitted a public records request to the Sheriff. Voces requested copies of all 1-247 forms[4] that the Sheriff received from ICE since November 2014. The custodian, Captain Catherine Trimboli, responded to Voces, but indicated that she was unable to immediately provide the requested forms. She explained that she needed to speak with ICE.[5]
*355 ¶ 6. Voces filed a petition for a writ of mandamus seeking to compel the Sheriff to produce the 1-247 forms. Prior to ruling on the mandamus, as a compromise, the circuit court ordered the Sheriff to produce redacted copies of all 1-247 forms. Accordingly, the Sheriff produced twelve 1-247 forms, but redacted the following information: (1) subject ID; (2) event number; (3) file number; (4) nationality; and (5) a series of boxes pertaining to immigration status. On April 7, 2015, the Sheriff provided forms with the detainee's nationality no longer redacted.
¶ 7. On June 3, 2015, the circuit court granted Voces' writ of mandamus and ordered the Sheriff to produce all 1-247 forms, unredacted. Conducting a balancing test, the court weighed Voces' strong interest in examining 1-247 forms against the Sheriffs interest in protecting the information contained within the forms.[6] The circuit court concluded that the balancing test weighed in favor of disclosure. The court ordered the Sheriff to produce unredacted versions of the 1-247 *356 forms to Voces within forty-eight hours, but stayed the order until June 12, 2015.[7]
¶ 8. The court of appeals affirmed the circuit court. The court concluded that 1-247 forms are not exempt from disclosure under Wisconsin public records law. The court concluded that "(1) no exception to disclosure under Wisconsin's open records law applies; and (2) the Sheriff failed to meet his burden of showing that the public interest in non-disclosure outweighs disclosure, given Wisconsin's very strong legislative intent and public policy favoring disclosure."[8]
¶ 9. First, the court of appeals rejected the Sheriffs argument that 1-247 forms are exempt from disclosure under Wis. Stat. § 19.36 because a federal regulation, 8 C.F.R. § 236.6, prevented disclosure of immigration-related information in the possession of state or local entities.[9] The court reasoned that the regulation applied to only those individuals currently in custody of the federal government.[10] Because the individuals at issue in the present case were not currently in federal custody, the court of appeals reasoned, the federal regulation did not prevent the release of 1-247 forms.[11] Next, the court concluded that the public interest balancing test weighed in favor of disclosure.[12]
*357 ¶ 10. We granted the Sheriffs petition for review and now reverse.
II. DISCUSSION
A. Standard of Review
¶ 11. This is a review of a writ of mandamus. Mandamus is a remedy that can be used "to compel a public officer to perform a duty of his office presently due to be performed." State ex rel. Marberry v. Macht, 2003 WI 79, ¶ 27, 262 Wis. 2d 720, 665 N.W.2d 155. "In order for a writ of mandamus to be issued, four prerequisites must be satisfied: '(1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law.'" Pasko v. City of Milwaukee, 2002 WI 33, ¶ 24, 252 Wis. 2d 1, 643 N.W.2d 72 (quoting Law Enforcement Standards Bd. v. Village of Lyndon Station, 101 Wis. 2d 472, 494, 305 N.W.2d 89 (1981)).
¶ 12. Our review requires us to interpret and apply Wisconsin public records law. Statutory interpretation and application present questions of law that we review independently, while benefiting from the analyses of the circuit court and the court of appeals. Osborn v. Board of Regents of University of Wisconsin System, 2002 WI 83, ¶ 12, 254 Wis. 2d 266, 647 N.W.2d 158 (Nichols v. Bennett, 199 Wis. 2d 268, 273, 544 N.W.2d 428 (1996)).
¶ 13. Moreover, our review also requires us to interpret a federal regulation, 8 C.F.R. § 236.6. We apply general principles of statutory interpretation *358 when construing federal regulations. See State v. Busch, 217 Wis. 2d 429, 441, 576 N.W.2d 904 (1998) ("When interpreting an administrative regulation, we generally use the same rules of construction and interpretation as applicable to statutes."); Village of Lyndon Station, 101 Wis. 2d at 489 ("As a corollary to the rule that validly enacted administrative rules are given the effect of law, it is generally accepted that the rules and regulations of administrative agencies are subject to the same principles of construction as apply to the construction of statutes . . . ."); see also Bonkowski v. Oberg Indus., Inc., 787 F.3d 190, 199 (3d Cir. 2015) ("In interpreting a federal regulation, we look to well-established principles of statutory interpretation.").
B. Statutory Interpretation, General Principles
¶ 14. Statutory interpretation "begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry." Seider v. O'Connell, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (citing Bruno v. Milwaukee Cty., 2003 WI 28, ¶¶ 8, 20, 260 Wis. 2d 633, 660 N.W.2d 656). Moreover, the "structure of the statute in which the operative language appears" is important. Id., ¶ 46. And, "statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to *359 avoid absurd or unreasonable results." Id., ¶ 46 (citing State v. Delaney, 2003 WI 9, ¶ 13, 259 Wis. 2d 77, 658 N.W.2d 416).
¶ 15. "The test for ambiguity generally keeps the focus on the statutory language: a statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." Id., ¶ 47. And, "Wisconsin courts ordinarily do not consult extrinsic sources of statutory interpretation unless the language of the statute is ambiguous." Id., ¶ 50. Extrinsic sources are those "interpretative resources outside the statutory text—typically items of legislative history." Id. (citation omitted).
¶ 16. It is under this framework that we review whether 1-247 forms are exempt from disclosure under the Wisconsin public records law.
C. Wisconsin Public Records Law
¶ 17. Wisconsin public records law affords the public the right to inspect certain documents within the possession of a state entity.[13] It "serves one of the basic tenets of our democratic system by providing an opportunity for public oversight of the workings of government." Nichols, 199 Wis. 2d 268, 273 (citing *360 Breier, 89 Wis. 2d 417, 433-34). To that end, "we have a presumption of open access to public records, which is reflected in both our statutes and our case law." Osborn, 254 Wis. 2d 266, ¶ 13; see also Wis. Stat. § 19.31 (providing "it is . . . the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them"). "This presumption reflects the basic principle that the people must be informed about the workings of their government and that openness in government is essential to maintain the strength of our democratic society." Linzmeyer v. Forcey, 2002 WI 84, ¶ 15, 254 Wis. 2d 306, 646 N.W.2d 811 (citing Breier, 89 Wis. 2d at 433-34).
¶ 18. Nevertheless, the public's right to access records is not unrestricted. See Woznicki v. Erickson, 202 Wis. 2d 178, 194, 549 N.W.2d 699 ("However, the right to public access is not absolute."). "The strong presumption of public access may give way to statutory or specified common law exceptions, or if there is an overriding public interest in keeping the public record confidential." Kroeplin v. Wisconsin Dep't of Nat. Res., 2006 WI App 227, ¶ 13, 297 Wis. 2d 254, 725 N.W.2d 286 (citation omitted); see also Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay, 116 Wis. 2d 388, 397, 342 N.W.2d 682 (1984) ("Thus, the general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential."). Accordingly, there are three ways in which a record may be exempt from disclosure: (1) the record is statutorily exempt; (2) the *361 record falls under a common-law exemption; or (3) the public interest balancing test weighs in favor of nondisclosure. See Linzmeyer, 254 Wis. 2d 306, ¶¶ 23-24.
¶ 19. Under this framework, we first examine whether the records at issue are statutorily exempt from disclosure.[14] The legislature codified a presumption of public access. It follows, that the legislature is similarly free to codify which records are subject to public inspection and which records are statutorily exempt from inspection. See Wis. Stat. § 19.35(1) ("Except as otherwise provided by law, any requester has a right to inspect any record." (emphasis added)).
¶ 20. There are statutory exemptions to the Wisconsin public records law's presumption of access that are codified in Wis. Stat. § 19.36. See, e.g., Wis. Stat. § 19.36(1)-(13). For the types of records described in the statute, the legislature has determined that they are categorically exempt from disclosure to the public.
¶ 21. Exemptions detailed in Wis. Stat. §§ 19.36(1)-(2) are of particular relevance in this case. These sections provide:
(1) APPLICATION OF OTHER LAWS. Any record which is specifically exempted from disclosure by state or federal law or authorized to be exempted from disclosure by state law is exempt from disclosure under s. 19.35(1), except that any portion of that record which contains public information is open to public inspection as provided in sub. (6).
(2) LAW ENFORCEMENT RECORDS. Except as *362 otherwise provided by law, whenever federal law or regulations require or as a condition to receipt of aids by this state require that any record relating to investigative information obtained for law enforcement purposes be withheld from public access, then that information is exempt from disclosure under s. 19.35(1).
Wis. Stat. §§ 19.36(1)-(2). As the text of the statute relates, § 19.36(1) prevents the release of any record that is exempted from disclosure under federal law. Similarly, § 19.36(2) exempts from disclosure any record "relating to investigative information obtained for law enforcement purposes."
¶ 22. Therefore, we examine whether federal law prohibits disclosure of 1-247 forms. In the case now before us, it follows that if 8 C.F.R. § 236.6 prohibits disclosure of information in 1-247 forms, they are exempt from disclosure under Wisconsin public records law. At oral argument, Voces agreed, but contended that 8 C.F.R. § 236.6 did not prohibit disclosure of the information in 1-247 forms.
D. 8 C.F.R. § 236.6
¶[ 23. Our consideration of the text and purpose of 8 C.F.R. § 236.6 compels the conclusion that it applies to any detainee for whom an 1-247 form has been issued by the federal government. As we explain below, to hold otherwise would flout the language and purpose of the federal regulation.
¶ 24. We begin with an examination of the text of 8 C.F.R. § 236.6 to determine its meaning. The regulation provides as follows:
No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise *363 holds any detainee on behalf of the Service (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. Such information shall be under the control of the Service and shall be subject to public disclosure only pursuant to the provisions of applicable federal laws, regulations and executive orders. Insofar as any documents or other records contain such information, such documents shall not be public records. This section applies to all persons and information identified or described in it, regardless of when such persons obtained such information, and applies to all requests for public disclosure of such information, including requests that are the subject of proceedings pending as of April 17, 2002.
f 25. The court of appeals reasoned that the phrase "holds any detainee on behalf of" the federal government required that the individual be in federal custody at the time when 1-247 form was served in order for 8 C.F.R. § 236.6 to apply.[15] The court of appeals reasoned that 8 C.F.R. § 236.6 applied only to those detainees who were then subject to the forty-eight hour hold requested by 1-247 forms.[16]
¶ 26. In contrast, the Sheriff contends that the first sentence of 8 C.F.R. § 236.6 is definitional. He reasons that the clause "holds any detainee on behalf of' the federal government refers to those individuals subject to an immigration detainer insofar as the facility is or was housing, maintaining, or servicing them prior to the federal government's potential to obtain custody. Under this interpretation, 8 C.F.R. *364 § 236.6 is not temporally limited; rather, it explains which types of entities and individuals are subject to the regulation. And, any individual that is subject to an 1-247 request (an immigration detainer request) is a detainee who has been housed, maintained or provided services by a state or local entity, regardless of when that occurred.
¶ 27. Both of these interpretations are reasonable, as reasonably well-informed persons could interpret the text of 8 C.F.R. § 236.6 as the court of appeals has and as the Sheriff has. The existence of two reasonable interpretations compels the conclusion that the regulation is ambiguous. See Bruno, 2003 WI 28, ¶ 19.
¶ 28. When a regulation is ambiguous, we may consult extrinsic sources to interpret the regulation's meaning. See State v. Williams, 2014 WI 64, ¶ 19, 355 Wis. 2d 581, 852 N.W.2d 467 ("Finally, and most important, if the interpreting court concludes that the statute is ambiguous, the court may consider extrinsic sources such as legislative history to discern the meaning of the statute." (citing Kalal, 271 Wis. 2d 633, ¶ 51)). Consistent with this principle, we look to extrinsic sources to assist us in determining the meaning of 8 C.F.R. § 236.6.
¶ 29. The statement of purpose of 8 C.F.R. § 236.6 was provided by the agency that promulgated the regulation and was set out in the notices in the Federal Register. It demarcates three purposes underlying the regulation: (1) to protect privacy of detainees; (2) to guarantee uniform treatment of information pertaining to detainees; and (3) to prevent ongoing investigations from being adversely impacted. See Comm'r of Correction v. Freedom of Info. Com'n, 52 *365 A.3d 636, 647-48 (Conn. 2012) ("The regulation was intended to ensure that the disclosure of information about detainees would be subject to a uniform federal policy, to protect the privacy of detainees, and, most significantly, to prevent adverse impacts on ongoing investigations and investigative methods.").
f 30. Indeed, the privacy interests of the detainees were a substantial concern. This interest is evinced in the statement of purpose of 8 C.F.R. § 236.6 as set out in the notices:
By channeling requests for information through the FOIA, which contains a privacy exception, the rule also protects detainees' privacy. Just as the government has a substantial interest in protecting legitimate national security, intelligence and law enforcement functions under the FOIA, detainees may have a substantial privacy interest in their names and the personal information connected with their status as detainees.[17]
Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Fa *366 cilities, 68 FR 4364-01, 4366 (January 29, 2003). And, allowing public access to information about an individual could have grave consequences for that individual. After all, "allowing such disclosures would be highly adverse to the privacy interests of a detainee who does not wish to be identified as a possible terrorist or who, after his release from detention, is cooperating with an ongoing government investigation." Comm'r of Correction, 52 A.3d at 648.
¶ 31. Another purpose of the regulation is to ensure the uniform treatment of the information contained within the forms. See Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 FR 19508-01, 19509 (2002) ("The rule bars release of such information by non-[f]ederal providers in order to preserve a uniform policy on the release of such information."). I-247 forms are federal records; the state does not generate or input information into them. The federal government has an interest in seeing that the information contained within the forms is treated uniformly by all facilities.
¶ 32. A final purpose of 8 C.F.R § 236.6 is "to prevent adverse impacts on ongoing investigations and investigative methods." Comm'r of Correction, 52 A.2d at 648; see also Am. Civil Liberties Union of New Jersey, Inc. v. Cty. of Hudson, 352 N.J. Super. 44, 69, 799 A.2d 629 (App. Div. 2002) ("The counties are not privy to the character and extent of federal investigations in progress nor, apparently, do they possess any independently acquired information regarding the role *367 of the INS detainees in those investigations."). The notices containing the statement of purpose initially passed in 2002,[18] provide:
Release of information about a specific detainee or group of detainees could also have a substantial adverse impact on ongoing investigations being conducted by federal law enforcement agencies in conjunction with the Service. Even though an individual detainee may choose to disclose his own identity or some information about himself, the release by officials housing detainees of a list of detainees or other information about them could give a terrorist organization or other group a vital roadmap about the course and progress of an investigation. In certain instances, the detention of a specific alien could alert that alien's coconspirators to the extent of the federal investigation and the imminence of their own detention, thus *368 provoking flight to avoid detention, prosecution and removal from the United States. Premature release of the identity of or information relating to a specific alien in detention could reasonably be expected to disclose the identity of a confidential source and techniques or procedures for law enforcement investigations or prosecution.
Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 FR 19508-01, 19509 (April 22, 2002).
¶ 33. Our examination of the purposes underlying 8 C.F.R. § 236.6 removes any ambiguity as to its meaning. We conclude that 8 C.F.R. § 236.6 is not temporally limited; it applies to all information pertaining to those individuals subject to 1-247 forms. It is evident after exploring the purpose of the regulation that "detainee" is a generalized term; it refers to all individuals subject to an 1-247 form.[19] It would be inconsistent with the three main purposes of 8 C.F.R. § 236.6 to hold that it applies only to information pertaining to those individuals presently in federal custody. And, "[a]ll of these purposes would be undermined by allowing state and local entities to disclose information about a detainee . . . subject only to their own policies and procedures." Comm'r of Correction, 52 A.3d at 648.
*369 ¶ 34. The regulation must be read to protect a detainee's information regardless of when an 1-247 form was received and regardless of whether a detainee is in the forty-eight hour hold requested in 1-247 in order to protect a detainee's privacy. After all, the sensitivity of a detainee's information cannot, and we conclude does not, depend on when the 1-247 form was received by the state or local entity. If the documents could be released at any time prior to the forty-eight hour period, then the privacy protections at the heart of 8 C.F.R. § 236.6 would be illusory.[20] As a consequence, the regulation must be interpreted to cover all information contained within an 1-247 form regardless of whether the individual that is the subject of the detention request is solely in state or federal custody or has been released. Our conclusion that the regulation is not temporally limited is consistent with this directive.
f 35. Similarly, the federal government's interest in the uniform treatment of immigration-related records by all facilities requires that the regulation applies to all 1-247 forms, without a temporal limitation. Stated otherwise, 8 C.F.R. § 236.6 controls 1-247 information pertaining to detainees without regard for when a facility receives that form. State or local entities do not have discretion to decide whether 1-247 *370 forms may be released. A contrary interpretation would vitiate consistency in treatment of 1-247 forms and the information they contain.
¶ 36. Finally, the regulation is meant to protect sensitive information pertaining to government criminal or immigration-related investigations. Surely, such an important interest cannot succumb to the temporal limitations that an alternative interpretation of 8 C.F.R. § 236.6 would impose. For this reason alone, the regulation must be interpreted to protect the information contained within I-247 forms.
¶ 37. Accordingly, we conclude that the court of appeals inaccurately interpreted 8 C.F.R. § 236.6 when it added the requirement that an individual who is subject to a I-247 form must be in the custody of the federal government for 8 C.F.R. § 236.6 to apply. The regulation is not so narrow, and the word "custody" is conspicuously absent from its text. Section 236.6 applies to any individual subject to an 1-247 immigration detention request. And, a different federal regulation discussing detainers distinguishes between "custody" and an individual subject to a detainer request:
Any authorized immigration officer may at any time issue a Form 1-247, Immigration Detainer—Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.
8 C.F.R. § 287.7 (2011).
¶ 38. Therefore, 8 C.F.R. § 236.6 protects all information contained within 1-247 forms pertaining to detainees that are housed, maintained, or held in *371 facilities run by state or private entities. Stated otherwise, the regulation is not temporally limited and does not apply only to those individuals in federal custody. Rather, 8 C.F.R. § 236.6 renders the 1-247 forms that Voces seeks "record[s] . . . specifically exempted from disclosure by. . . federal law," under Wis. Stat. § 19.36(1). For similar reasons, these records also contain information obtained for federal law enforcement investigative purposes, and Wis. Stat. § 19.36(2) prevents their disclosure.[21]
¶ 39. We are not alone in our interpretation of 8 C.F.R. § 236.6. The Supreme Court of Connecticut also examined the purpose of 8 C.F.R. § 236.6 and concluded that the regulation prohibits disclosure of documents that pertain to those individuals that are no longer in state or federal custody. Comm'r of Correction, 52 A.3d at 649 ("Nothing in the language of the regulation differentiates between information about detainees who have been transferred to the custody of another governmental entity and information about detainees who have been released."). In Commissioner of Correction, the Connecticut Supreme Court rejected the lower court's conclusion that "because the first sentence of 8 C.F.R. § 236.6 uses the present tense when it refers to any 'person . . . that houses, maintains, provides services to, or otherwise holds any *372 detainee'; the regulation applies only to a person who currently engages in one of the described activities . . . Id. at 646 (internal citations omitted). Rather, the court accepted the federal government's reasoning and concluded that "the use of the present tense . . . [is] not a temporal limitation with a beginning and an end." Id. (internal quotation marks omitted). Accordingly, the court concluded that the regulation continues to prevent the release of 1-247 forms even after a detainee has been released from custody. Id. at 649. Our interpretation, that the regulation is not temporally limited in application, is consistent with the Connecticut Supreme Court's holding.
¶ 40. Finally, we note that our opinion does not curb the presumption of openness that Wisconsin public records law so carefully protects. An overarching purpose of 8 C.F.R. § 236.6 is to channel requests for federal records through federal law; namely the Freedom of Information Act (FOIA).[22] See generally 5 U.S.C. § 552. After all, the federal government is in a better position to determine whether there are privacy and safety risks innate in releasing records that it created.
¶ 41. In the present case, the requested records, 1-247 forms of individuals housed in Milwaukee *373 County Jail, fall under the umbrella of 8 C.F.R. § 236.6. The individuals in the present case, all of whom are subject to 1-247 requests, are detainees that were housed, maintained, or serviced by a local entity.[23] Accordingly, federal law mandates that information pertaining to these detainees contained in 1-247 forms not be released.
¶ 42. Given that a federal law prevents the release of the information in 1-247 forms, we conclude that both Wis. Stat. § 19.36(1) and Wis. Stat. § 19.36(2) apply to exempt 1-247 forms from disclosure under Wisconsin public records law. As the text of the statute suggests, § 19.36(1) prevents the release of any document that is exempted from disclosure under federal law.
¶ 43. Similarly, Wis. Stat. § 19.36(2) exempts from disclosure any record containing information that federal law mandates not be released because it "relates] to investigative information obtained for law enforcement purposes." And, as discussed above, 8 C.F.R. § 236.6 mandates that state or local entities are not to release information contained within 1-247 forms. Therefore, both of these provisions exempt 1-247 forms from disclosure pursuant to the provisions of Wisconsin public records law. Accordingly, the Sheriff cannot be compelled to produce them.
III. CONCLUSION
¶ 44. In light of the foregoing, we need not reach the common-law exemptions or balancing test because we conclude that the 1-247 forms are statutorily ex *374 empt from disclosure under Wisconsin public records law. Stated more fully, under Wis. Stat. §§ 19.36(l)-(2), any record exempted from disclosure pursuant to federal law is exempt from disclosure under Wisconsin law. And, federal regulation 8 C.F.R. § 236.6 precludes the release of any information pertaining to individuals detained by a state or local facility and 1-247 forms contain such information. Accordingly, read together, Wis. Stat. §§ 19.36(l)-(2) and 8 C.F.R. § 236.6 exempt 1-247 forms from release under Wisconsin public records law. Furthermore, because 1-247 forms are statutorily exempt from release, the public interest balancing test has no application here.
By the Court. The The decision of the court of appeals is reversed; writ of mandamus is quashed.
¶ 45. Annette Kingsland Ziegler, J., did not participate.

 Voces de La Frontera, Inc. v. Clarke, 2016 WI App 39, 369 Wis. 2d 103, 880 N.W.2d 417.

 The Honorable David L. Borowski of Milwaukee County presided.

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 1-247 forms are requests by the federal government to a state or local entity to hold an individual for a period of time not to exceed forty-eight hours after the individual is released from state custody.

 Captain Trimboli did not cite 8 C.F.R. § 236.6 as a reason for non-disclosure of the forms. However, it is sufficient that Captain Trimboli recognized that 1-247 forms may contain sensitive information and accordingly took measures to ensure that such information was not improperly released. We cannot expect a records custodian to have expertise in federal immigration law sufficient to determine the effect of federal law on release of 1-247 forms. For this reason, a record custodian's failure to cite a statutory exemption to the public records law is of no consequence to our analysis. Journal Times v. Racine Bd. of Police & Fire Com'rs, 2015 WI 56, ¶¶ 74-75, 362 Wis. 2d 577, 866 N.W.2d 563 (reasoning, this "court's de novo determination *355 whether certain information is statutorily exempted from disclosure is not aided by anything a custodian might say in a denial letter, nor is it deterred by the custodian's silence." (internal quotations omitted)). See also State ex rel. Blum v. Bd. of Educ., Sch. Dist. of Johnson Creek, 209 Wis. 2d 377, 387-88, 565 N.W.2d 140 (Ct. App. 1997) (explaining, "the existence of a statute exempting certain kinds of information from disclosure is not uniquely within the custodian's knowledge" and therefore a custodian's "failure to specifically cite the statutory exemption does not preclude us, or the trial court, from determining whether the Board was authorized to deny the request.").

 On June 11,2015, the court of appeals temporarily stayed the circuit court's order compelling the Sheriff to provide 1-247 forms pending review.

 In the interim, the Sheriff petitioned for leave to appeal. But on June 17, 2015, the circuit court issued a final order, and the Sheriff filed a notice of appeal. Consequently, on June 24, 2015, the court of appeals dismissed the Sheriffs petition for leave to appeal as moot.

 Voces, 369 Wis. 2d 103, ¶ 18.

 Id., ¶ 40.

 Id., ¶ 28.

 Id.

 Id., ¶ 47.

 The public records law applies only to "records." Record is defined expansively: "A 'record' subject to the Public Records Law is 'any material on which. . . information is recorded or preserved . . . which has been created or is being kept by an authority.'" Hempel v. City of Baraboo, 2005 WI 120, ¶ 25, 284 Wis. 2d 162, 699 N.W.2d 551. In the present case, neither party disputes that 1-247 forms are records for purposes of Wisconsin public records law.

 Because we ultimately conclude that the 1-247 forms at issue in the present case are exempt from disclosure under a statutory exemption, we do not address the contours of the common-law exceptions or weigh competing interests under the balancing test.

 Voces, 369 Wis. 2d 103, ¶ 28.

 Id., ¶¶ 28-29.

 The notices of the regulation also explain:
For example, individuals who were originally detained because of their possible connection to terrorism, have an overwhelming interest in not being connected with such activity. And particularly with respect to those individuals cooperating with the government's law enforcement investigations, there are powerful reasons why such persons would wish to conceal their identities and whereabouts. Indeed, other INS regulations expressly shield from disclosure information pertaining to or contained in an asylum application. See 8 CFR § 208.6(a). Contrary to some of the commenters[1] suggestions, the fact that certain detainees may wish to publicly identify themselves, which they are free to do, in no way undermines this assessment.
Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 68 FR 4364—01, 4366 (January 29, 2003).

 The regulation was initially passed as a temporary regulation in 2002 before being permanently enacted in 2003. The regulation was promulgated in response to a request for documents pertaining to individuals detained by, what was at the time, the Immigration and Naturalization Service (INS). In that case, "INS detainees [were] housed in the Hudson County Correctional Center and the Passaic County Jail pursuant to long-standing contracts between the INS and the counties." Am. Civil Liberties Union of New Jersey, Inc. v. Cty. of Hudson, 352 N.J. Super. 44, 58, 799 A.2d 629, 637 (App. Div. 2002). The plaintiff requested the records of the individuals detained pursuant to these agreements, and a trial court in New Jersey ordered the jails to provide the records. Id. at 638. As the Appellate Division of the New Jersey Superior court explained, "five days after the trial court's order and judgment were entered, the INS promulgated as an 'interim rule' a regulation barring disclosure of the information sought here, 8 C.F.R. § 236.6 (2002)." Id. Based on the interim regulation, the court concluded that, "[t]o the extent the State laws involved may be viewed as requiring public disclosure of information regarding INS detainees, they would be in conflict with 8 C.F.R. § 236.6." Id. at 655.

 The inclusion of the phrase "such detainee" at the end of the second sentence of the regulation does not alter this analysis. "Such detainee" merely refers back to the phrase "any detainee" in the preceding sentence. 8 C.F.R. § 236.6. Accordingly, the phrase "such detainee," like the phrase "any detainee," is a categorical description and does not temporally limit the regulation.

 We note that the intent of those seeking the information does not diminish the detainee's privacy interest in the information. If the information can be accessed by one party, then it can be obtained by any other organization or individual that seeks the same information. This, of course, includes those individuals or organizations with potentially less noble aspirations than Voces.

 We note that our decision does not pass judgment on the desirability of the Sheriffs compliance or non-compliance with the Department of Homeland Security's immigration detention requests. Rather, the issue in the present case "involve [s] the nature and scope of information that must be made available to the public concerning INS detainees. The power to regulate matters relating to immigration and naturalization resides exclusively in the federal government." Am. Civil Liberties Union of New Jersey, Inc. v. Cty. Of Hudson, 799 A.2d 629, 654 (N.J. App. Div. 2002).

 The notices explaining the purpose of the regulation state: "Accordingly, any disclosure of such records will be made by the Service and will be governed by the provisions of applicable Federal law, regulations, and Executive Orders. This rule does not address or alter in any way the Service's policies regarding its release of information concerning detainees; these policies remain unchanged." Release of Information Regarding Immigration and Naturalization Service Detainees in Non-Federal Facilities, 67 FR 19508-01, 19509 (April 22, 2002).

 Neither party disputes that the Milwaukee County Sheriffs Department participates in ICE's detainer program, and Voces cited the Sheriffs participation in the program as one of the reasons it sought to obtain the requested forms.

 8 C.F.R. § 236.6 provides in relevant part:
No person, including any state or local government entity or any privately operated detention facility, that houses, maintains, provides services to, or otherwise holds any detainee on behalf of the Service (whether by contract or otherwise), and no other person who by virtue of any official or contractual relationship with such person obtains information relating to any detainee, shall disclose or otherwise permit to be made public the name of, or other information relating to, such detainee. . . . (emphasis added).