COURT OF APPEALS
DECISION
DATED AND FILED

June 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP324**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV1283

IN COURT OF APPEALS
DISTRICT III

---

TERRY JACKSON,

    PETITIONER-RESPONDENT,

 V.

RACINE COUNTY DISTRICT ATTORNEY,

    RESPONDENT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Racine County: MARK F. NIELSEN, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The Racine County District Attorney appeals a judgment entered in favor of Terry Jackson, awarding him attorney fees, costs,

statutory damages, and punitive damages under WIS. STAT. § 19.37(2)-(3) (2023-24).[1] The circuit court concluded that the District Attorney violated Wisconsin's public records law, WIS. STAT. §§ 19.31-19.37, by failing to maintain the entire prosecutorial file relating to Jackson's conviction as required by "a different statute," thereby failing to produce the file to Jackson.

¶2 We agree with the District Attorney that the circuit court erred for two reasons. First, Jackson failed to satisfy the requirements for a writ of mandamus. Second, the District Attorney's inability to produce Jackson's entire criminal file because the District Attorney failed to maintain that file contrary to a separate law does not constitute a violation of the public records law.

¶3 Accordingly, we reverse the judgment and remand to the circuit court to vacate the judgment awarding Jackson attorney fees, costs, statutory damages, and punitive damages.

## BACKGROUND

¶4 In August 2020, and prior to obtaining an attorney, Jackson contacted the District Attorney's office to request a copy of the prosecutorial file relating to Jackson's 1992 criminal case and conviction for first-degree murder. Jackson spoke to George Yee, who was the District Attorney's paralegal in charge of records requests. Yee informed Jackson that the file had been sent out to the company the District Attorney used for electronic conversion of files and that the file would not be available for three to four months. Four months later, Jackson again contacted the District Attorney's office, but Yee told Jackson that the file

---

[1] All references to the Wisconsin Statutes are to the 2023-24 version.

could not be released to an unrepresented party. In April 2021, Jackson obtained an attorney.

¶5 Between April and August 2021, Jackson, through his attorney, contacted the District Attorney's office and left two voicemails requesting a return call, but he received no response. In August 2021, Jackson, again through his attorney, filed a written public records request with the District Attorney, seeking a copy of the prosecutorial file relating to Jackson's criminal case and conviction, "including investigative reports, investigative notes, statements of witnesses, exculpatory evidence notes and court filings (whether filed or not)." Yee then contacted Jackson's attorney and stated that he could not locate Jackson's file. Thereafter, Jackson's attorney sent an email to the District Attorney requesting Jackson's file and threatening legal action if she did not produce the file.

¶6 In September 2021, Jackson filed a petition for a writ of mandamus, alleging the foregoing. The petition sought to compel the District Attorney to "immediately produce the requested records," and it sought attorney fees, costs, statutory damages, and punitive damages. Jackson did not serve the petition on the District Attorney until November 2021. Prior to filing his mandamus petition, Jackson had filed a discovery demand in his criminal case.

¶7 In December 2021, the District Attorney mistakenly filed a response to the writ in Jackson's criminal case. In its subsequent decision regarding attorney fees, damages, and costs, the circuit court described the District Attorney's response as explaining that Jackson's file was "an old file which had passed through many hands in thirty years," that "[t]he file could not be located at first," and that "parts of the file were located and other parts were being reconstructed to the extent possible." Thereafter, the District Attorney produced

all available portions of the file to Jackson other than some photographs and an interview that were subsequently provided to Jackson.

¶8    In February 2022, Jackson filed a petition for an alternative writ of mandamus and requested a hearing.  At the hearing, the District Attorney explained that she had located portions of Jackson's file and recreated other portions.  The records the District Attorney provided to Jackson's attorney included copies from the clerk of court's records and reports from the Racine Police Department.  The District Attorney further stated that she was not denying Jackson access to the prosecutorial file, except for those portions constituting attorney work product.

¶9    The circuit court orally granted the alternative writ and set May 9, 2022, as the date for Jackson's attorney to review the prosecutorial file relating to Jackson's conviction, other than work product, at the District Attorney's office. Following his attorney's in-person review of the file, Jackson filed a motion seeking attorney fees, costs, statutory damages, and punitive damages pursuant to WIS. STAT. § 19.37(2)-(3).

¶10    At the hearing on Jackson's motion, the District Attorney reiterated that she had found a portion of Jackson's file and recreated other portions, all of which were provided to Jackson.  The District Attorney also stated that "everything was turned over that was there to turn over," other than attorney work product, and that she had provided those records to Jackson prior to the hearing on the petition for the alternative writ of mandamus.  The District Attorney further admitted that she only had one part of the file and that she was unable to locate the rest of the file.  Jackson argued that SCR ch. 72, pertaining to retention and maintenance of court records, and WIS. STAT. ch. 978, addressing obsolete records

in the district attorney's custody, required the District Attorney to maintain Jackson's file for a certain number of years and that the District Attorney had not complied with this requirement.

¶11     In November 2022, the circuit court issued a written decision awarding Jackson attorney fees, costs, statutory damages, and punitive damages totaling $18,539.  The court determined that the District Attorney had a statutory duty to maintain Jackson's file and that she had a duty to "provide a true and accurate copy of such a record on request to a member of the public" under the public records law.  The court further determined that the District Attorney's "excuse that [her] record keeping was imperfect is no excuse at all" and that her failure to produce Jackson's file was "unjustified" despite the District Attorney's actions to mitigate her failure.  The District Attorney now appeals.[2]

## DISCUSSION

¶12     On appeal, the District Attorney argues that Jackson is not entitled to attorney fees, costs, and damages under WIS. STAT. § 19.37(2)-(3) for four reasons.  First, the District Attorney contends that Jackson did not obtain a judicially sanctioned change in the parties' legal relationship under *Friends of Frame Park, U.A. v. City of Waukesha*, 2022 WI 57, 403 Wis. 2d 1, 976 N.W.2d 263, because the District Attorney provided Jackson with the requested records

---

[2] Jackson's statement of facts does not contain record citations, and only one portion of his argument section contains record citations.  We remind counsel that both a statement of facts and an argument section must contain record citations, *see* WIS. STAT. RULE 809.19(1)(d)-(e), (3)(a)2, and that future violations of our rules of appellate procedure may result in sanctions, *see* WIS. STAT. RULE 809.83(2).

5

before the circuit court issued the alternative writ of mandamus. For the same reason, the District Attorney also asserts that Jackson's mandamus action is moot.

¶13 Second, the District Attorney argues that Jackson did not satisfy the requirements for a writ of mandamus because, under *State ex rel. Richards v. Foust*, 165 Wis. 2d 429, 477 N.W.2d 608 (1991), he did not have a clear legal right to the prosecutorial file relating to his conviction. Third, the District Attorney contends that the circuit court conflated "a violation of a law requiring district attorneys to maintain their files for years after prosecution with a violation of the public records law," which was contrary to our prior decision in *State ex rel. Zinngrabe v. School District of Sevastopol*, 146 Wis. 2d 629, 431 N.W.2d 734 (Ct. App. 1988). Finally, the District Attorney asserts that the court applied the incorrect standard for awarding punitive damages under WIS. STAT. § 19.37(3).

¶14 We assume, without deciding, that Jackson's mandamus action is not moot. Therefore, we will address whether Jackson satisfied the mandamus requirements and whether the District Attorney violated the public records law by not producing Jackson's entire criminal file due to the District Attorney's failure to maintain that file contrary to a separate law. Both are questions of law that we review independently. *See Nichols v. Bennett*, 199 Wis. 2d 268, 272-73, 544 N.W.2d 428 (1996).

## I. Jackson did not satisfy the requirements for a writ of mandamus.

¶15 A writ of mandamus is "a remedy that can be used 'to compel a public officer to perform a duty of his [or her] office presently due to be performed.'" *Voces De La Frontera, Inc. v. Clarke*, 2017 WI 16, ¶11, 373 Wis. 2d 348, 891 N.W.2d 803 (citation omitted). In order for a writ of mandamus to be issued, four requirements must be satisfied: "(1) a clear legal right; (2) a

6

positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law." ***Id.*** (citation omitted).

¶16     Under the public records law, a petitioner may bring a mandamus action seeking a court order for the release of a record when a public officer withholds a record or delays granting access to a record after the petitioner makes a written request for disclosure.  WIS. STAT. § 19.37(1)(a).  A petitioner who "prevails in whole or in substantial part" in a mandamus action filed under § 19.37(1) is entitled to attorney fees, damages, costs, and may be entitled to punitive damages.  Sec. 19.37(2)-(3).

¶17     In Wisconsin, the public records law "affords the public the right to inspect certain documents within the possession of a state entity."  ***Voces De La Frontera***, 373 Wis. 2d 348, ¶17.   Therefore, we recognize "a presumption of accessibility to public records, reflected in both the statutes and in our case law." ***Nichols***, 199 Wis. 2d at 273 (citing WIS. STAT. § 19.31).  However, "the public's right to access records is not unrestricted."  ***Voces De La Frontera***, 373 Wis. 2d 348, ¶18.  Thus, when evaluating a public records request, we presume that the records "shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential." ***Nichols***, 199 Wis. 2d at 273 (citation omitted).   Here, the District Attorney raises the common-law exception in ***Foust*** as an exception precluding Jackson's access to the prosecutorial file relating to his conviction.

¶18     In ***Foust***, our supreme court held that "the common law provides an exception which protects the district attorney's files from being open to public inspection." ***Foust***, 165 Wis. 2d at 433-34.  In reaching this conclusion, the court

7

relied on previous cases holding that defendants do not have a general right to access a prosecutor's file either before or after trial. *Id.* at 434-35. The court further noted that the prosecutor's file "may contain historical data leading up to the prosecution which may be in the form of anonymous statements, informants' statements, or neighborhood investigations at the scene of the crime—all of which are to be protected if continuing cooperation of the populace in criminal investigations is to be expected." *Id.* at 435. Nevertheless, our supreme court later held that "[a] prosecutor cannot shield documents subject to the [public] records law simply by placing them into a 'prosecutorial file.' It is the nature of the documents and not their location which determines their status under [WIS. STAT.] §§ 19.31 to 19.37." *Nichols*, 199 Wis. 2d at 274.

¶19 Here, Jackson sought access to "investigative reports, investigative notes, statements of witnesses, exculpatory evidence notes and court filings (whether filed or not)" from the prosecutorial file relating to his conviction. These documents are of the types that our supreme court held are not open to inspection under *Foust*. Thus, Jackson does not have a clear legal right to the prosecutorial file relating to his conviction. As a result, Jackson cannot satisfy the first requirement for a writ of mandamus, and he was therefore not entitled to the alternative writ of mandamus.

¶20 Other than stating that the District Attorney did not raise *Foust* in the circuit court, Jackson makes no developed argument addressing the common-law exception in *Foust*. Instead, Jackson, without citation to legal authority, argues that he has "an inviolable legal right to inspect the prosecutorial file" and that the District Attorney "not only had a positive and plain duty to make the prosecutorial file available to Jackson, but, had a positive and plain duty by Wisconsin Statute to keep and maintain a complete copy of that file and the

record."[3]   Jackson's arguments are undeveloped and unsupported by citation to legal authority, and we reject them on those bases.   *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

¶21   We acknowledge that the District Attorney did not raise *Foust*'s common-law exception in the circuit court as a reason to deny Jackson access to the prosecutorial file; we nevertheless decline to apply the forfeiture rule in this case.   Although an appellant forfeits an argument on appeal if he or she fails to raise it in the circuit court, *see State v. Gee*, 2019 WI App 31, ¶39, 388 Wis. 2d 68, 931 N.W.2d 287, the forfeiture rule is one of judicial administration, and we "may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case," *State v. Counihan*, 2020 WI 12, ¶27, 390 Wis. 2d 172, 938 N.W.2d 530.   In particular, we may address a forfeited issue when that issue "involves a question of law rather than of fact, when the question of law has been briefed by both parties and when the question of law is of sufficient public interest to merit a decision."   *See Apex Electrs. Corp. v. Gee*, 217 Wis. 2d 378, 384, 577 N.W.2d 23 (1998).

¶22   In this case, whether the common-law exception in *Foust* bars Jackson's access to the prosecutorial file relating to his conviction is an issue of law rather than of fact, and the issue, although undeveloped by Jackson, has been

---

[3]   Jackson also argues that he "is entitled to an in camera inspection of privileged records as a defendant seeking post[]conviction relief," citing *State v. Shiffra*, 175 Wis. 2d 600, 499 N.W.2d 719 (Ct. App. 1993), *overruled by State v. Johnson*, 2023 WI 39, 407 Wis. 2d 195, 990 N.W.2d 174.   We note that our supreme court overruled *Shiffra* in *Johnson*, and that *Shiffra*— which involved a very different context—would not establish Jackson's clear legal right to the prosecutorial file relating to his conviction.   *See Johnson*, 407 Wis. 2d 195, ¶1. Jackson cites no other legal authority in support of his argument regarding his entitlement to an in camera review of privileged records and, therefore, we do not consider it further.   *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

briefed by both parties—certainly in full by the District Attorney. Further, the issue is of sufficient public interest to merit a decision because it involves a public records request for access to a district attorney's file in a criminal matter. Jackson does not develop an argument addressing the foregoing reasons for disregarding the District Attorney's forfeiture.

¶23    Accordingly, although the District Attorney did not raise an argument regarding the common-law exception in *Foust* in the circuit court, we decline to apply the forfeiture rule under the circumstances of this case. Under *Foust*, Jackson has no clear legal right to the prosecutorial file relating to his conviction.

## II. The District Attorney's failure to produce Jackson's file due to a failure to maintain Jackson's file as required by a different statute is not a violation of the public records law.

¶24    The District Attorney next argues that she did not violate the public records law, WIS. STAT. §§ 19.31-19.37, by failing to maintain Jackson's criminal case file as required under a different statute. Citing *Zinngrabe*, the District Attorney contends that "[a]ny duty to maintain Jackson's prosecutorial file does not spring from the public records law." Thus, the District Attorney asserts that "Jackson is not entitled to relief under the public records law merely because the District Attorney did not possess her entire prosecutorial file as required by another statute" at the time Jackson requested it.

¶25    The public records law "is designed to make *existing* records available to the public unless withholding such documents is specifically authorized by law." *State ex rel. Gehl v. Connors*, 2007 WI App 238, ¶13, 306 Wis. 2d 247, 742 N.W.2d 530 (emphasis added). "A governmental entity may not circumvent disclosure of a record by failing to create a record that it is legally

10

required to create. However, the public records law does not require the government to create a record or release a non-existent record." *Journal Times v. City of Racine Bd. of Police & Fire Comm'rs*, 2015 WI 56, ¶73, 362 Wis. 2d 577, 866 N.W.2d 563. Pursuant to *Zinngrabe*, a party seeking relief under the public records law for an alleged violation of a records retention law fails because a governmental entity's "alleged failure to keep sought-after records may not be attacked under the public records law." *Gehl*, 306 Wis. 2d 247, ¶13; *see also Zinngrabe*, 146 Wis. 2d at 634-35.

¶26 We agree with the District Attorney that our decision in *Zinngrabe* is directly on point. In *Zinngrabe*, the petitioner requested the minutes of a school board's closed meetings. *Zinngrabe*, 146 Wis. 2d at 631. The school board responded that there were no minutes of those closed meetings because no formal action was taken at those meetings. *Id.* The petitioner then sought a writ of mandamus, punitive damages, and costs under the public records law, arguing that the school board was required to maintain records of its closed meetings pursuant to two sections in WIS. STAT. ch. 120 and that the school board's failure to do so allowed him to enforce those requirements under the public records law. *Zinngrabe*, 146 Wis. 2d at 630, 634.

¶27 We rejected the petitioner's argument, stating that the school board's alleged failure to keep minutes of its closed meetings could not be attacked under the public records law. *Id.* at 634-35. We explained that the public records law "does not dictate which documents are to be created or direct the government to maintain specific records. The duty to maintain such records and the enforcement of such duty must be found elsewhere in the law." *Id.* at 635. Thus, we concluded that the petitioner "misconceive[d] the purpose and provisions of the [public]

11

records law by attempting to use the [public] records law to reach the alleged violation of official duties." ***Id.***

¶28     Here, the circuit court did not explicitly state which law required the District Attorney to maintain Jackson's file, but it appeared to rely on WIS. STAT. § 978.07 when it concluded that the District Attorney was obligated by law to maintain Jackson's file.[4]     That section governs when a district attorney may destroy "obsolete records in his or her custody," including those records "of a felony punishable by life imprisonment."  Sec. 978.07(1)(c)1.[5]  Here, the District Attorney did not have Jackson's entire file related to his 1992 conviction when Jackson made his request.

¶29     As we concluded in ***Zinngrabe***, however, Jackson cannot use the public records law to attack the District Attorney's alleged failure to maintain Jackson's complete file under WIS. STAT. § 978.07.  The public records law does not direct the District Attorney to maintain the file; § 978.07 does.  Because the District Attorney's failure to maintain Jackson's entire file under § 978.07 does not constitute a violation of the public records law, the circuit court erred by concluding that the District Attorney violated the public records law by failing to produce a nonexistent portion of Jackson's file.

---

[4] Although Jackson argued that the District Attorney was required to maintain Jackson's file under SCR ch. 72, that chapter addresses the period of time a court, not the district attorney, is required to maintain records.  *See* SCR 72.01.

[5] The district attorney may destroy "[a]ny case record of a felony punishable by life imprisonment or a related case" after a defendant's eligibility date for parole or for release to extended supervision, "or 50 years after the commencement of the action, whichever occurs later."  WIS. STAT. § 978.07(1)(c)1.  If there are no dates for parole eligibility or release to extended supervision, "the district attorney may destroy the case record after the defendant's death." ***Id.***

¶30    Jackson fails to develop a response to the District Attorney's argument; indeed, he fails to address *Zinngrabe* at all.  Instead, he merely asserts that the District Attorney "clearly violated the public records law when it not only failed in its statutory duty to maintain the record as [a] custodian on behalf of the citizens of the State of Wisconsin, but, actually caused a substantial part of that record to be destroyed."  (Formatting altered.)  Because Jackson fails to address *Zinngrabe* and the State's contention that Jackson is not entitled to relief under that case, we deem that point conceded.  *See Hoffman v. Economy Preferred Ins. Co.*, 2000 WI App 22, ¶9, 232 Wis. 2d 53, 606 N.W.2d 590 (1999) ("An argument to which no response is made may be deemed conceded for purposes of appeal.").

## CONCLUSION

¶31    In sum, we conclude that Jackson failed to satisfy the mandamus requirements and that the District Attorney did not violate the public records law by failing to produce Jackson's entire file as a result of her failure to maintain Jackson's file.  For these reasons, Jackson was not entitled to attorney fees, costs, statutory damages, and punitive damages under WIS. STAT. § 19.37(2)-(3).  Because Jackson was not entitled to punitive damages, we need not address whether the circuit court applied the incorrect standard for awarding punitive damages under § 19.37(3).

¶32    Therefore, we reverse the judgment awarding Jackson attorney fees, costs, statutory damages, and punitive damages, and remand to the circuit court with instructions to vacate that judgment.

        *By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.